[No. S099131. Dec. 15, 2003.]

THE PEOPLE ex rel. THOMAS J. ORLOFF, as District Attorney, etc., et al., Plaintiffs and Appellants, v.
PACIFIC BELL et al., Defendants and Respondents.

1134

### Counsel

Thomas J. Orloff, District Attorney, Harry B. Johnson and Julie A. Dunger, Deputy District Attorneys, for Plaintiff and Appellant Alameda County District Attorney.

James P. Fox, District Attorney, and John E. Wilson, Deputy District Attorney, for Plaintiff and Appellant San Mateo County District Attorney.

Dean D. Flippo, District Attorney, Lydia Villarreal and Denine J. Guy, Deputy District Attorneys, for Plaintiff and Appellant Monterey County District Attorney.

Gary M. Cohen, Mary F. McKenzie, Barbara J. Ferguson, Karen Paull and Charlyn Hook for California Public Utilities Commission as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, Herschel T. Elkins, Assistant Attorney General, Michael R. Botwin and Margaret Reiter, Deputy Attorneys General, for the State of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Lawrence G. Brown and David La Bahn for California District Attorneys Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

The Sturdevant Law Firm, James C. Sturdevant, Mark T. Johnson; Steyer Lowenthal Boodrookas Alvarez & Smith, Allan Steyer, Carlos A. Alvarez and Jennifer Chon for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bart Kimball, Bobby C. Lawyer, Carol M. Anderson; Pillsbury Winthrop and Kevin M. Fong for Defendants and Respondents.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

Munger, Tolles & Olson, Henry Weissmann and A. Tali Zer-Ilan for Verizon California, Inc., Southern California Edison Company, San Diego Gas & Electric Company and Southern California Gas Company as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**GEORGE, C. J.**— ■ Public Utilities Code section 1759 (hereafter section 1759) provides that only this court and the Court of Appeal possess jurisdiction to review decisions of the California Public Utilities Commission (PUC) or "to enjoin, restrain, or interfere with" the PUC in the performance of its duties. Thus, an action filed in superior court against a public utility subject to the jurisdiction of the PUC can be precluded by section 1759, where the action would "interfere with" the authority of the PUC. Here, several district attorneys filed a civil action in superior court, alleging that a public utility violated the law by engaging in false advertising and unfair business practices. An administrative enforcement proceeding involving some of the same allegations of misconduct by this utility was pending in the PUC at the time the civil action was filed, and the superior court and the Court of Appeal concluded that because the present action might result in conflicting

rulings with the parallel PUC proceeding, the action would interfere with the authority of the PUC and thus was barred by section 1759.

We conclude that the lower courts erred in determining that the present action is barred by Public Utilities Code section 1759. As we shall explain, past decisions of this court recognize that the PUC does not have exclusive jurisdiction over all actions against a public utility, and that the mere possibility of, or potential for, conflict with the PUC is, in general, insufficient in itself to establish that a civil action against a public utility is precluded by section 1759. Although the lower courts relied upon the circumstance that in this instance an administrative proceeding presenting a similar or identical issue was concurrently pending before the PUC, a number of statutory provisions expressly authorize public law enforcement officials (in addition to the PUC) to initiate civil enforcement actions against public utilities in instances of alleged misconduct by such utilities. In expressly establishing overlapping enforcement authority against public utilities by both the PUC and public prosecutors, the Legislature has demonstrated that it contemplates that public prosecutors and the PUC will coordinate their enforcement efforts—and that the superior court in such a civil action can tailor its proceedings and rulings—to avoid any actual conflict. Nothing in the present action brought by public prosecutors inevitably would lead to conflicting rulings that would interfere with or undermine the regulatory authority of the PUC, and indeed the PUC itself has filed an amicus curiae brief in this matter, eschewing any suggestion that the initiation and prosecution of this civil action would interfere with the performance of its duties and instead maintaining that civil actions brought by public prosecutors are an important complement to the PUC's consumer protection efforts. Under these circumstances, we conclude that the superior court erred in dismissing this action under section 1759, and we reverse the judgment of the Court of Appeal upholding the dismissal.

I

A

Acting on behalf of and in the name of the People, on September 2, 1999, the District Attorneys for the Counties of Alameda, San Mateo, and Monterey collectively filed this action against defendants, seeking injunctive relief, civil penalties, and restitution pursuant to the unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200, 17500). Named as defendants in the action were Pacific Bell, Pacific Telesis Group, SBC Communications (then the

parent corporation of Pacific Bell), and Business Response Inc. (BRI, an independent telemarketing firm).[1]

The first cause of action in the complaint alleged that Pacific Bell violated Business and Professions Code section 17500 by making false and misleading representations to consumers when marketing three types of telecommunications services—(1) caller identification blocking, (2) custom calling services, and (3) inside wire repair insurance.

The second cause of action alleged that the foregoing marketing practices also constituted unfair competition in violation of Business and Professions Code section 17200. In addition, the complaint alleged that Pacific Bell violated section 17200 by: (1) failing to provide consumers with sufficient information to choose telecommunications products and services, as required by Public Utilities Code section 2896; (2) depriving consumers of the right, conferred by Public Utilities Code section 2893, to withhold the display of their telephone numbers and identities upon other telephone equipment; and (3) infringing the right of privacy guaranteed by article I, section 1, of the California Constitution.

The complaint specifically alleged that Pacific Bell did not disclose sufficient information to consumers in the course of marketing the options for blocking caller identification. The caller identification system can permit the display of a customer's telephone number and other personal information, including the name of the customer, upon a specially equipped telephone of the recipient of the call. If a customer chooses the unblocked option for caller identification, this personal information automatically is displayed for the recipient of the call. In the event more customers select the unblocked option, the caller identification system is more profitable for Pacific Bell, because more consumers subscribe to the service when it provides identification information concerning a greater percentage of telephone users. The option for blocking caller identification, on the other hand, protects the privacy of a customer by automatically preventing the display of the caller's name and telephone number. And, because less information is available through this service when fewer customers choose the unblocked option, the service is less profitable for Pacific Bell when customers choose to block their caller identification information.

Pacific Bell hired defendant BRI to commence a telemarketing campaign to induce customers to select the unblocked option. Pacific Bell allegedly instructed BRI to characterize a change to the unblocked option as "selective

---

[1] Except when necessary to distinguish among the various defendants, they are referred to herein as Pacific Bell.

blocking" and as a free *upgrade* in service, rather than as a *downgrade*, as BRI originally had proposed. The unblocked option could be characterized as selective blocking because a caller is able to block his or her personal identifying information for any single telephone call by pressing three keys on the telephone touchpad before making that particular call. Unless this three-digit code for blocking is dialed again before making each subsequent call, however, the personal information identifying the caller once again is displayed, because the default setting for the unblocked option is to display this information.[2]

As a result of this advertising campaign, more than 100,000 customers switched to the unblocked option. Approximately one-quarter of these customers, however, subsequently requested to return to complete blocking of their caller identification. These customers reported either that they had not authorized the change to selective blocking, or that they had authorized the change based upon untrue or misleading information. The People alleged that customers had not been informed fully regarding the two options for caller identification blocking, and that Pacific Bell thus had not met the disclosure standards required by Public Utilities Code section 2896.

The complaint further alleged that Pacific Bell had engaged in misleading and deceptive marketing of its optional custom calling service packages. These packages, which combine more than one optional service, were marketed under names such as "Basics Saver Pack" and "Essential Saver Pack." Because Pacific Bell also used the term "basic" to describe its minimum level of residential phone service, the complaint alleged that the practice of marketing the optional and more expensive custom calling service packages by using the same term was misleading and failed to disclose adequately that the costs for optional custom calling services were in addition to the cost of the lower level of basic services. Moreover, Pacific Bell allegedly did not disclose that individual services included in a custom calling service package could be purchased separately, without purchasing an entire package. Finally, the complaint alleged that although Pacific Bell required its marketers to recommend custom calling services to individual customers based upon the specific needs of the customer, Pacific Bell invariably recommended the most expensive package of optional services for all customers.

With regard to insurance for inside telephone wire repair, the complaint alleged that Pacific Bell did not disclose to tenants that landlords possess the

---

[2] Complete blocking of caller identification information also could have been characterized as selective blocking, because a caller is able to *permit* the display of his or her personal information for a particular telephone call by dialing a different three-digit code before making that call. The default setting for the complete blocking option, however, is not to display any personal information regarding the caller.

duty to maintain inside telephone wiring. In addition, the People alleged, Pacific Bell specified the hourly rate that Pacific Bell would charge for wire repair in the absence of insurance, but did not inform customers that the customers could hire installers not affiliated with Pacific Bell and not bound by the rate schedule of Pacific Bell. Furthermore, customers allegedly were not informed of less expensive wire insurance plans.

The complaint sought a permanent injunction to prohibit the alleged misconduct, as well as civil penalties, restitution, and costs of suit.

Soon after filing the complaint, the People filed a motion seeking a preliminary injunction to prohibit Pacific Bell from continuing to engage in the alleged false advertising and unlawful business practices. The superior court denied the motion on the ground that it lacked subject matter jurisdiction over the action, and the court did not address the merits of the motion. Subsequently, the superior court sustained the demurrer of Pacific Bell without leave to amend—once again determining that it lacked subject matter jurisdiction over all claims asserted against Pacific Bell.

The superior court entered a judgment of dismissal in favor of Pacific Bell. The People appealed from that judgment and from the order denying the motion for a preliminary injunction. Pursuant to the stipulation of the parties, the superior court stayed all proceedings against the three remaining defendants pending the outcome of the appeal.

B

The determination of the superior court that it lacked subject matter jurisdiction was based upon the circumstance that a related administrative proceeding was then pending before the PUC. That proceeding arose from several complaints filed by private consumer advocates between April and June of 1998. The PUC Office of Ratepayers Advocates subsequently joined the PUC proceeding, and on June 30, 1998, an administrative law judge (ALJ) consolidated the various complaints. These administrative complaints included challenges to the legality of the practices alleged in the present action, as described in the preceding subsection, including allegations that such practices amounted to violations of the UCL. The administrative complaints also challenged additional practices, not questioned in the present action, allegedly committed by Pacific Bell in connection with its marketing of telecommunications services.

After an evidentiary hearing, the administrative proceeding in the PUC was submitted on March 26, 1999, and several days later the PUC extended indefinitely the deadline for issuing a ruling in the matter. When the People

filed the present civil action on September 9, 1999, no tentative or final ruling had been issued by the PUC, and the PUC had not issued any order requiring defendants to cease and desist any activities challenged in the proceeding. According to the People, defendants continued their allegedly unlawful practices during the pendency of the proceeding in the PUC.

On December 22, 1999, the ALJ filed a tentative decision for the consideration of the PUC. The tentative decision determined that Pacific Bell had violated Public Utilities Code section 2896 by not disclosing sufficient information to consumers when it marketed options for blocking caller identification. In addition, the ALJ concluded that Pacific Bell had engaged in misleading and deceptive marketing of its optional custom calling service packages. Furthermore, the ALJ found that Pacific Bell did not present customers with sufficient information regarding insurance for inside wire repair. The tentative decision recommended imposing a $25 million fine and establishing a customer education fund of $25 million.

Pacific Bell appealed the tentative decision rendered by the ALJ to the PUC commissioner assigned to the case. This commissioner issued a proposed decision in November 2000, recommending that Pacific Bell be fined $2,373,000 for violations in the marketing of call blocking and for its failure to inform customers of less expensive optional services. The decision also would have required Pacific Bell to pay restitution, and determined that any further action against Pacific Bell for violations of the UCL was not necessary.[3]

When the Court of Appeal issued its decision in the present appeal in June 2001, the PUC had not yet issued a final decision in the administrative proceeding. The appellate court concluded that Public Utilities Code section 1759, subdivision (a), which provides that only this court and the Court of Appeal possess jurisdiction to review a decision of the PUC or to interfere with the PUC in the performance of its duties, divested the superior court of subject matter jurisdiction over the civil action filed by the district attorneys. The Court of Appeal reasoned that the present action raises claims identical to those asserted in the administrative proceeding in the PUC and thus might result in factual and legal conflicts with regard to ongoing PUC proceedings. The Court of Appeal held that the circumstance that the present civil action was instituted by plaintiffs acting on behalf of the public was insufficient to overcome the preemption of such actions pursuant to section 1759. The appellate court therefore affirmed the judgment of dismissal entered by the superior court.

---

[3] The Court of Appeal took judicial notice of the various decisions proposed by the ALJ and by the commissioner.

While the petition for review from the Court of Appeal's decision in this case was pending before this court, the PUC issued its final decision in the administrative proceeding in September 2001.[4] The decision determined that Pacific Bell had failed to provide customers with adequate information when it marketed the three types of services challenged in the present action, and that the utility therefore had deprived customers of meaningful choices with regard to such services. The final decision imposed a fine of $25,550,000 (later reduced by the PUC on rehearing to $15,225,000)[5] but, unlike the tentative decision of the ALJ, did not order the creation of a customer education fund and, unlike the revised proposed decision of the commissioner, did not order restitution. Instead, the PUC required Pacific Bell to notify its customers of their options regarding the various services at issue and to provide an opportunity for them to cancel any unwanted services.

The decision of the PUC expressly was limited to whether Pacific Bell violated provisions of the Public Utilities Code and to remedies available under that code. After stating that (1) the UCL claims in the present civil action were "based on factual allegations essentially identical to those . . . alleged in this [administrative] proceeding"; (2) the remedies for violations of the UCL are "cumulative to each other and to the remedies or penalties available under all other laws of this state" (Bus. & Prof. Code, §§ 17205, 17534.5); and (3) the superior court had dismissed the present action on the ground that the PUC possessed exclusive jurisdiction over the subject matter of the complaint, the decision of the PUC stated: "Our disposition of the instant complaint rests on Public Utility Code issues, *and we do not adjudicate the Unfair Competition Law claims.* (See Business and Professions Code[,] § 17204.)" (Italics added.)

We granted the People's petition for review to determine whether the Court of Appeal properly concluded that the district attorneys' civil action was barred by Public Utilities Code section 1759.[6,7]

---

[4] At the request of the People and amicus curiae Consumer Attorneys of California, we take judicial notice of the PUC's final decision. (Evid. Code, § 452, subd. (c).)

[5] The PUC reduced the amount of the fine based on its conclusion that the time period for which penalties properly could be imposed was shorter than originally determined.

[6] While this matter was pending before this court, the PUC decision summarized above came before the Court of Appeal. The Court of Appeal rejected a challenge to the PUC's determination that the PUC had no authority to adjudicate the UCL claims that had been raised in the administrative proceeding, agreeing with the PUC's conclusion that a claim under the UCL may be brought only in court and not in an administrative proceeding. (*Greenlining Institute v. Public Utilities Com.* (2002) 103 Cal.App.4th 1324, 1328–1333 [127 Cal.Rptr.2d 736].) That issue is not presented in this case and has not been briefed or argued in this court, and accordingly we express no view on the question.

[7] Appearing as amici curiae on behalf of the People are the California Public Utilities Commission, the Attorney General of California, and the Consumer Attorneys of California.

## II

### A

Public Utilities Code section 1759, subdivision (a) (hereafter section 1759(a)), states: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court."

The issue here is whether the present civil action against Pacific Bell, filed in the superior court, would require the superior court: (1) to review, reverse, correct, or annul any decision of the PUC; or (2) to enjoin, restrain, or interfere with the PUC in the performance of its official duties, within the meaning of section 1759(a). If so, section 1759(a) would preclude the superior court from exercising jurisdiction over the action, as concluded by the superior court and the Court of Appeal.

█ In analyzing this issue, we note at the outset that it is well established that section 1759(a) is not intended to, and does not, immunize or insulate a public utility from any and all civil actions brought in superior court. (See, e.g., *Truck Owners etc., Inc. v. Superior Court* (1924) 194 Cal. 146, 154–159 [228 P. 19] [construing predecessor to § 1759]; *Yolo Water etc. v. Superior Court* (1919) 43 Cal.App. 332, 339–342 [185 P. 195] [same].) Indeed, a number of statutes in the Public Utilities Code expressly authorize the filing of civil actions in superior court against public utilities. (See Pub. Util. Code, §§ 2101, 2102, 2106; see also *id.,* § 243 [Public Utilities Act "shall not release or waive any right of action . . . which may . . . accrue under any law of this State."].)

The most general of these provisions is Public Utilities Code section 2106. █ That statute provides that any public utility that violates the laws of this state, or that violates an order or decision of the PUC, shall be liable to persons and entities damaged by such conduct. The statute also provides for exemplary damages, and explicitly states that an action to recover damages caused by a public utility "may be brought in any court of competent

Briefs supporting defendants have been filed by amicus curiae Civil Justice Association of California and, collectively, by amici curiae Verizon California Inc., Southern California Edison Company, San Diego Gas & Electric Company, and Southern California Gas Company.

jurisdiction by any corporation or person." (*Ibid.*) Moreover, recovery pursuant to section 2106 does not in any manner affect the state's recovery of penalties or the PUC's power to punish for contempt. (*Ibid.*)[8]

Two relatively recent decisions of this court have examined the relationship between sections 1759(a) and 2106. In *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893 [55 Cal.Rptr.2d 724, 920 P.2d 669] (*Covalt*),[9] private individuals had filed a civil action in superior court against a public utility, seeking damages and injunctive relief on the ground that powerlines owned and operated by the utility emitted dangerous levels of electromagnetic radiation, causing plaintiffs to fear for their health and to require medical monitoring. Our decision set forth a three-part inquiry for determining whether the action would interfere with the PUC in the performance of its duties and thus was precluded by section 1759(a): (1) whether the PUC possessed the authority to formulate a policy regarding any public health risk related to electric and magnetic fields arising from the powerlines of regulated utilities, or a policy regarding what actions, if any, the utilities should have taken to minimize any such risk; (2) whether the PUC had exercised that authority to adopt such policies; and (3) whether the superior court action filed by private persons against the utility would hinder or interfere with those policies.

With regard to the third part of the test set forth in *Covalt, supra,* 13 Cal.4th 893—regarding whether the civil action would hinder or interfere with a policy of the PUC—our decision followed the rule previously set forth in *Waters v. Pacific Telephone Co.* (1974) 12 Cal.3d 1, 4 [114 Cal.Rptr. 753, 523 P.2d 1161]: "[A]n action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, *but also*

---

[8] Section 2106 states in full:

"Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

"No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

[9] Covalt was a real party in interest in that matter, and we have utilized this designation in the past in referring to the decision. (See, e.g., *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 264 [115 Cal.Rptr.2d 874, 38 P.3d 1098].) For consistency, we continue the use of that designation here.

*when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy."* (*Covalt, supra,* 13 Cal.4th at p. 918 [55 Cal.Rptr.2d 724, 920 P.2d 669], italics added.)

Applying the foregoing three-part test to the civil action filed in *Covalt, supra,* 13 Cal.4th 893, our decision determined that (1) the PUC possessed the authority to regulate matters related to electromagnetic fields arising from the powerlines of public utilities, as well as matters regarding the actions utilities must undertake to minimize any associated risks; (2) the PUC had exercised its authority to adopt such policies—policies reflecting the commission's finding that it lacked sufficient information to decide whether such fields were dangerous or whether utilities must undertake particular mitigation measures; and (3) a civil action seeking a determination that electromagnetic fields arising from utility powerlines caused damage to the plaintiffs, or that the utility should be enjoined from locating its powerlines in particular areas, would be inconsistent with the findings of the PUC. Those findings included determinations that the available evidence did not support a reasonable belief or conclusion that electromagnetic fields from powerlines posed a substantial risk of harm, and that utilities need not take action to reduce field levels unless and until the evidence supported such a conclusion. Therefore, our decision concluded, the civil action would require an adjudication of issues previously considered by the PUC, and the resolution of those issues by the PUC was reflected in its official policies. For these reasons, we held that the action would interfere with and hinder the ongoing regulatory efforts undertaken by the PUC in connection with this subject matter, and section 1759 thus precluded the civil action.

Our other recent decision, filed in 2002, also determined whether a civil action filed pursuant to Public Utilities Code section 2106 was precluded by section 1759, and there we reached a conclusion different, at least in part, from that in *Covalt.* In *Hartwell Corp. v. Superior Court, supra,* 27 Cal.4th 256 (*Hartwell*), residents of an area filed civil actions alleging that various water companies had provided them unsafe drinking water, causing deaths, personal injuries, and property damage. Our decision in *Hartwell* determined that not all claims alleged in the civil action were barred by section 1759, and we applied the three-part test established in *Covalt, supra,* 13 Cal.4th 893, as follows.

First, our decision concluded that the PUC possessed authority to adopt policies regarding water quality and to undertake appropriate action to ensure water safety. (*Hartwell, supra,* 27 Cal.4th 256, 269–272.)

Second, we concluded that, although another state agency had assumed responsibility for setting standards and enforcing laws related to water quality, the PUC had continued to exercise its authority to adopt policies regarding the rates charged by public water utilities and the compliance by these utilities with water quality standards. (*Hartwell, supra,* 27 Cal.4th 256, 272–274.)

Third, our decision in *Hartwell* found some claims alleged in the civil action to be barred because their adjudication would interfere with the regulatory authority of the PUC, but that other claims would not result in such interference and therefore were not precluded by section 1759. The decision concluded, for example, that because the PUC relied upon certain water quality standards as a benchmark in approving water rates charged by public utilities, challenges in the civil action to the adequacy of those standards, and claims for damages allegedly caused by unhealthy water permitted by the standards, would interfere with broad and continuing regulatory programs of the PUC such as ratemaking for public utilities. In addition, the PUC had provided a safe harbor for utilities meeting these water quality standards, and our decision observed that a determination by the superior court that the existing standards were inadequate would undermine this policy of the PUC by holding the utilities liable for damages caused by their failure to undertake action that the PUC repeatedly had determined was not required. (*Hartwell, supra,* 27 Cal.4th 256, 276.) Similarly, claims in the civil action seeking injunctive relief for current violations of water quality standards were precluded by section 1759, because an injunction predicated upon a finding of such violations would conflict with the decision of the PUC that the defendant utilities presently were in compliance with the standards, and that no further inquiries or evidentiary hearings regarding compliance were required. (*Hartwell, supra,* 27 Cal.4th at p. 278.)

In contrast, the decision in *Hartwell* concluded that claims in the civil action for damages allegedly caused by water that *did not* satisfy applicable water standards were not preempted by section 1759—even though the PUC had issued a decision including a finding that, for the previous 25 years, water provided by the defendant utilities substantially *did* comply with the water standards. In concluding that this prior PUC pronouncement regarding past compliance with water quality standards did not prelude these particular civil claims, our decision relied upon the following circumstances: (1) the investigation by the PUC that led to the decision was characterized by the commission as a process designed to gather information, rather than as a rulemaking proceeding; (2) even though information gathered in the investigation and reported in the decision might have resulted in a rulemaking or enforcement proceeding against the utilities, the finding by the PUC that the utilities had complied with water quality standards did not constitute "part of a broad and continuing program to regulate . . . water quality" and thus the program "was not part of an identifiable 'broad and continuing supervisory or

regulatory program of the commission' [citation] related to such routine PUC proceedings as ratemaking [citation] or approval of water quality treatment facilities"; and (3) the civil action sought damages for injuries caused by water that had failed to meet water standards in prior years, whereas any finding by the PUC regarding past compliance would be relevant only to a future remedial program designed to halt current and ongoing violations, rather than to redress injuries for past violations, because the PUC could not provide such relief for past violations.[10] (*Hartwell, supra,* 27 Cal.4th 256, 276–277.)

In sum, we determined in *Hartwell* that the claims for damages in the civil action might result in a jury award based upon a finding that public water utilities violated water quality standards, and that although such a finding would be contrary to a pronouncement in a single prior PUC decision, such a finding or damage award would not hinder or frustrate the declared supervisory and regulatory policies of the PUC. (*Hartwell, supra,* 27 Cal.4th 256, 277–278.)[11]

### B

Unlike the civil actions in *Covalt, supra,* 13 Cal.4th 893, and *Hartwell, supra,* 27 Cal.4th 256, which were instituted against public utilities by private parties, the superior court action in this case was instituted by district attorneys on behalf of the People, and the People maintain that this distinction has a significant bearing on the applicability of section 1759(a). As explained below, we agree that this factor is significant in determining whether a civil action impermissibly will interfere with the PUC in the performance of its official duties within the meaning of section 1759(a).

 As noted in *Covalt, supra,* 13 Cal.4th 892, 916, Public Utilities Code section 2106 provides for the sole private remedy—a traditional action for damages brought by the injured party in superior court—among the various remedies prescribed in chapter 11 of the Public Utilities Act (Pub. Util. Code, § 2100 et seq.) that are designed to redress violations of the law and of PUC decisions by public utilities. The other remedies set forth in this chapter "are

---

[10] "[T]he PUC can redress violations of the law or its orders by suit (§ 2101), by mandamus or injunction (§§ 2102–2103), by actions to recover penalties (§§ 2104, 2107), and by contempt proceedings (§ 2113), but these remedies are essentially prospective in nature." (*Hartwell, supra,* 27 Cal.4th 256, 277.)

[11] Our decision in *Hartwell, supra,* 27 Cal.4th 256, 279–283, also held that civil claims against entities not regulated by the PUC were not precluded by section 1759, even though such claims might result in findings that conflict with analogous findings in PUC decisions regarding regulated public utilities. The decision stated: "[S]ection 1759 must be read to bar superior court jurisdiction that interferes with the PUC's performance of its *regulatory* duties, duties which by constitutional mandate apply only to regulated utilities." (*Hartwell, supra,* 27 Cal.4th 256, 280–281.)

*public* remedies prosecuted in the name of the people of the state by commission counsel or by the Attorney General or the appropriate district attorney. (§ 2101.)" (*Covalt, supra,* 13 Cal.4th 893, 916, italics added.)

The People contend that because the present action constitutes a public action initiated by several district attorneys to remedy alleged violations of sections 17200 and 17500 of the Business and Professions Code, Public Utilities Code section 1759 does not preclude the action, notwithstanding any concurrent proceedings in the PUC regarding the same subject matter. The People rely upon several statutes in support of this contention.

■ Public Utilities Code section 2101 requires the PUC to ensure that the provisions of the California Constitution and statutes affecting public utilities are enforced, and that any violations of these provisions are prosecuted promptly. This statute further states: "Upon the request of the commission, the Attorney General or the district attorney of the proper county or city and county shall aid in any investigation, hearing, or trial had under the provisions of this part, *and shall institute and prosecute actions or proceedings for the enforcement of the provisions of the Constitution and statutes of this State affecting public utilities and for the punishment of all violations thereof.*" (Italics added.) In addition, Public Utilities Code section 2105 states that all penalties provided by the Public Utilities Act shall be cumulative, and that an action to recover one penalty shall not constitute a bar to, or affect the recovery of, any other penalty or forfeiture.

■ Although it is unclear from the record whether the PUC requested that the district attorneys involved in the present action aid in the PUC's investigation of defendant utilities or in its administrative proceeding against those utilities, Public Utilities Code sections 2101 and 2105 do appear to authorize district attorneys, even without such a request by the PUC, to prosecute actions in the name of the People against public utilities for violations of the law. (See *California Oregon Power Co. v. Superior Court of Cal.* (1955) 45 Cal.2d 858, 870 [291 P.2d 455] [the superior court had jurisdiction over an action initiated by the State of California to abate a nuisance caused by a public utility, because the PUC did not possess exclusive jurisdiction and had not undertaken any action regarding the matter].)

The People further rely upon Government Code section 26509, subdivision (a), which states in relevant part: "*Notwithstanding any other provision of law,* . . . the district attorney shall be given access to, and may make copies of, any complaint against a person subject to regulation by a consumer-oriented state agency and any investigation of the person made by the agency, where that person is being investigated by the district attorney regarding

possible consumer fraud." (Italics added.) This statute expressly identifies the PUC as one of the consumer-oriented state agencies to which subdivision (a) refers. (Gov. Code, § 26509, subd. (d)(32).) Only where the release of such materials would jeopardize an investigation or other duties of the agency is the agency authorized to withhold this information from the district attorney, and even then the agency only can *delay* the release of the materials. (*Id.*, subd. (c).) ■ Government Code section 26509 does not expressly authorize district attorneys to initiate actions against public utilities, but it implicitly does so by conferring a right to examine agency materials as part of a district attorney's investigation of consumer fraud. There would be little reason to require that the district attorney be provided access to agency materials to facilitate his or her investigation of consumer fraud, if the district attorney could not seek to remedy, in a judicial action, any consumer fraud discovered as a result of that investigation. Moreover, subdivision (b) of Government Code section 26509 states that if the district attorney does not take action with respect to the complaint or investigation, the material must remain confidential. This subdivision also implicitly suggests authorization for the district attorney to file an action for consumer fraud.

Finally, the People assert that claims under the UCL, including those asserted in the present action, constitute allegations of possible consumer fraud within the meaning of Government Code section 26509, subdivision (a), and that the UCL expressly authorizes district attorneys to prosecute such claims "exclusively in a court of competent jurisdiction." (Bus. & Prof. Code, § 17204.) These claims, the People contend, therefore are not within the exclusive jurisdiction of the PUC.

The People apparently do not assert that the claims authorized by these statutes *never* could be precluded by section 1759, and appear to concede that the three-part inquiry set forth in *Covalt* remains applicable to these claims. According to the People, however, the circumstance that the present action constitutes a public enforcement action initiated pursuant to the authority conferred by the foregoing statutes must be considered when determining, pursuant to the third part of that inquiry, whether the action would undermine a general regulatory policy of the PUC.

We agree with the position of the People that the foregoing statutes significantly influence the inquiry whether a general regulatory policy of the PUC would be interfered with or undermined by the filing and maintenance of the civil action. The constitutional and statutory authority of the PUC to regulate public utilities is indeed broad (*Covalt, supra*, 13 Cal.4th 893, 914–915), but where a civil action brought by public prosecutors in the name of the People against a public utility does not usurp any exclusive power of the PUC and is authorized expressly by statute, we properly may

discern a legislative intent that the superior court and the PUC possess concurrent subject matter jurisdiction, and that public prosecutors and PUC officials share the authority and responsibility to prosecute violations of these laws. Furthermore, statutes such as Government Code section 26509, subdivision (d)(32), which permits the PUC to defer disclosure of investigative materials to public prosecutors in the event such disclosure would jeopardize the PUC's own investigation or other duties, clearly indicate that in situations encompassed by this statute and by analogous provisions, the PUC and public prosecutors are expected to coordinate their efforts to accomplish the most efficient and effective means of remedying any misconduct of the public utility.

To summarize, where the PUC does not possess exclusive regulatory authority over a matter, district attorneys are authorized to initiate actions against public utilities that have violated the law. Where the matter concerns consumer fraud, and disclosure of investigative materials by the PUC would not jeopardize its own investigation or authority, district attorneys are authorized to prosecute civil actions against public utilities for violations of these consumer fraud laws. If disclosure would impede the investigation being conducted by the PUC, the district attorneys are required to await disclosure pending further action by the PUC. In any event, where one of the foregoing statutes authorizes a superior court action by a public prosecutor regarding an issue that also is within the jurisdiction of the PUC, there is a diminished likelihood that an action in superior court initiated by the district attorney would undermine the ongoing regulatory authority of the PUC over the particular issue involved, because as a general matter the Legislature intended in these situations for the enforcement authority of the PUC to be shared with public prosecutors.

Nevertheless, as the People appear to concede, even where these statutes authorize actions against public utilities in the name of the public, such an action in superior court potentially might result in direct interference with a broad and continuing regulatory program of the PUC and thus be precluded by section 1759. For example, where any relief awarded by the superior court would render completely ineffective or moot the relief, orders, or policies previously rendered by the PUC with regard to precisely the same subject matter, it would be reasonable to conclude that such an action in superior court would frustrate the ongoing regulatory powers of the PUC and would be precluded by section 1759. Certainly, it appears that the present action, initiated in superior court by district attorneys, was authorized by Public Utilities Code sections 2101 and 2105, Government Code section 26509, subdivision (a), and Business and Professions Code section 17204. Nevertheless, because a similar proceeding addressing much of the same alleged misconduct by the same parties was pending in the PUC at the time the action was filed, the statutory authorization for the civil action does not

necessarily establish that the action is permissible pursuant to Public Utilities Code section 1759, although the explicit statutory authorization for such an action by a public prosecutor is very relevant to the pertinent inquiry, as explained above.

## C

The parties do not identify any decisions that have considered whether an action initiated by a public prosecutor against a public utility for alleged violations of the UCL is precluded by section 1759. (Cf. *Wise v. Pacific Gas & Electric Co.* (1999) 77 Cal.App.4th 287 [91 Cal.Rptr.2d 479] [private attorney general action for violation of UCL was not precluded by § 1759 where concurrent investigatory PUC proceeding was pending, but the trial court was directed to stay the civil action under the primary jurisdiction doctrine pending further PUC proceedings]; *Cellular Plus v. Superior Court* (1993) 14 Cal.App.4th 1224 [18 Cal.Rptr.2d 308] [action alleging price fixing in violation of the Cartwright Act was not barred by § 1759 even though PUC regulated applicable rates].) The decision of the Court of Appeal determined that the present action, including the motion for preliminary injunctive relief, was barred because it posed a potential conflict with the PUC administrative proceeding. The People contend no such conflict warranting preclusion of the present action could have existed, because no final decision had been issued by the PUC when the trial court and the Court of Appeal filed their decisions, and these courts should not have speculated regarding the action the PUC might take at some future time. To illustrate the point, the People note that the subsequent final decision of the PUC in this case expressly declined to resolve the UCL claims that had been asserted in the PUC, thus eliminating any possibility of conflicting rulings regarding those claims, even though the same claims had been asserted in each proceeding and thus a potential for conflict existed.

Indeed, as the People contend, the Court of Appeal did not identify any existing policy or ongoing regulatory effort by the PUC that would be frustrated by the present action. There existed only a potential for conflicting findings of fact and conclusions of law.

On the other hand, unlike the PUC proceeding considered in *Hartwell*, which was intended only to gather information concerning subjects regulated by the commission, the present PUC proceeding constituted an enforcement proceeding to determine whether Pacific Bell had violated the law and, if so, what penalties and remedies should be imposed. No party to the present dispute contests that the PUC, pursuant to the first two parts of the test in *Covalt, supra*, 13 Cal.4th 892, possesses the authority to engage in such an enforcement proceeding, or that it had exercised that authority by conducting

the administrative proceeding. The pertinent inquiry is whether the potential for inconsistent findings of fact and conclusions of law in the present civil action and in the administrative proceeding would impede or interfere with the PUC in the performance of its duties, pursuant to the third part of the test set forth in the *Covalt* decision. We conclude that it would not, and that section 1759 does not preclude the present action.

Like the Court of Appeal, Pacific Bell asserts that the present action is barred because it raises some of the same claims that were made in the PUC proceeding. ▮▮▮ But the circumstance that a civil action, brought by a public prosecutor, involves a claim similar to one presented in a pending PUC proceeding does not in itself establish that the prosecution of the civil action will interfere with the PUC's performance of its duties. Pacific Bell does not contend that the proceeding pending in the PUC was part of any ongoing supervisory or regulatory program or rulemaking procedure that would be obstructed or frustrated by the civil action. Indeed, the PUC itself, in an amicus curiae brief filed in this court in support of the People, agrees that nothing in the present action undermines or hinders any ongoing policy, program, or other aspect of its authority, and emphasizes that the Attorney General and the district attorneys expressly are authorized to bring UCL claims in *court*, but that the PUC is not. (Bus. & Prof. Code, §§ 17204, 17535.) As is established by the various statutory provisions discussed above, as well as by others cited in the PUC's brief (see, e.g., Pub. Util. Code, §§ 7607, 7720, 7721), the PUC, the Attorney General, and the district attorneys possess overlapping responsibility for investigating and prosecuting enforcement actions against public utilities. The PUC's brief further indicates that "the relief sought in the court action would complement," rather than interfere with, the PUC's efforts. Furthermore, as discussed previously, because the present action concerns allegations of consumer fraud against a public utility, and district attorneys are authorized to initiate actions to remedy such misconduct, Government Code section 26509 makes clear that the PUC and the district attorneys are expected to coordinate their actions. Where a *potential* for conflicting factual findings or legal conclusions exists, coordination of efforts between the PUC and the district attorneys can avoid any *actual* conflict. For example, district attorneys might seek a stay of a civil action to await the outcome of parallel PUC proceedings. In addition, the superior court might fashion preliminary injunctive relief in a manner so that it is subject to modification in the event the PUC issues a different order concerning the same misconduct. Similarly, a superior court considering the imposition of penalties in the civil action can take into account any fines imposed by the PUC.

The only instance in which the present action inevitably would result in a conflict with the PUC enforcement proceeding, with the result that the authority of the PUC conceivably might be hindered, is where permanent

injunctive relief ordered by the superior court would conflict with a "safe harbor" subsequently established by the PUC or with some type of permanent cease and desist order of the PUC regarding the same conduct. Because injunctive relief is subject to modification by the court upon a showing of changed circumstances, however, this potential conflict would not undermine the authority of the PUC as long as the superior court deferred to any contrary ruling by the PUC with regard to a subject over which the PUC possesses exclusive jurisdiction. Other claims seeking penalties or restitution for past misconduct, as asserted in the present case, including UCL claims premised upon the same violations of the Public Utilities Code adjudicated before the PUC, would not interfere with any ongoing regulatory effort of the PUC, even where, despite coordination between the PUC and the district attorneys and despite efforts by the superior court, the claims might result in factual findings or legal conclusions different from those reached by the PUC.

Contrary to the contention of Pacific Bell, the case of *People v. Superior Court (Dyke Water Co.)* (1965) 62 Cal.2d 515 [42 Cal.Rptr. 849, 399 P.2d 385] is clearly distinguishable from the present case and does not compel the conclusion reached by the lower courts in the case before us. In *Dyke Water Co.*, after the PUC had rendered a decision against a public utility requiring the utility to formulate and implement a plan for making refunds to its customers, the utility filed a declaratory judgment action in superior court, seeking to have that court, rather than the PUC, resolve issues regarding the implementation of the PUC order. In that setting, this court held: "The controlling facts are that the whole matter of how refunds are to be made is still pending and undecided before the commission and Dyke is obligated by a final order of the commission to present a plan for making refunds. Under these circumstances section 1759 precludes the superior court from adjudicating at Dyke's behest the very issues that will necessarily be presented to the commission in the continuing exercise of its jurisdiction in the refund proceedings." (62 Cal.2d at p. 518.) For the reasons explained above, the civil enforcement action brought by public prosecutors in the present case bears little resemblance to the civil action instituted by the utility in *Dyke Water Co*, which sought a declaration relating to the implementation of a refund program that had been ordered by, and was still pending before, the PUC.

The case of *Schell v. Southern Cal. Edison Co.* (1988) 204 Cal.App.3d 1039 [251 Cal.Rptr. 667], also relied upon by Pacific Bell, is similarly

inapposite. In *Schell*, the owner of a recreational vehicle park filed a civil action, contending that the defendant public utility improperly discriminated against him by charging him a commercial rate for electricity and refusing to supply him with electricity under the PUC rate schedule applicable to mobilehome parks and their residents. The trial court sustained the defendant's demurrer to the complaint and dismissed the action, and on appeal the Court of Appeal affirmed, noting that the question of the proper rate structure for recreational vehicle parks was before the PUC. The appellate court further concluded that "[t]he decision as to whether or not master-metered residential recreational vehicle parks should be charged at the same rate as master-metered mobilehome parks, or at another domestic or commercial rate, is clearly within the exclusive purview of the PUC as part of its continuing jurisdiction over rate making and rate regulation in provision of baseline service to residential customers of the electric and gas corporations." (204 Cal.App.3d at p. 1046.) Unlike *Schell*, the case before us presents a question—whether Pacific Bell engaged in false advertising in undertaking the alleged marketing activities here at issue—that does not involve ratemaking or any other matter assigned to the exclusive jurisdiction of the PUC.

In sum, the Court of Appeal erred in relying solely upon the circumstance that the allegations of the complaint in the present action were the same as the allegations in the PUC proceeding, rather than considering the extent to which the remedies in the two proceedings were likely to be inconsistent and thus were likely to undermine any ongoing authority or regulatory program of the PUC. Enforcement of the vast array of consumer protection laws to which public utilities are subject is a task that would be difficult to accomplish by a single regulatory agency, and the applicable statutes clearly contemplate that other public law enforcement officials, in addition to the PUC, must be involved in the effort to enforce such laws. No actions by the district attorneys in the present case would interfere with the authority of the PUC; on the contrary, the proceedings they have instituted assist the enforcement efforts of the PUC by ensuring that public utilities to the same degree as other types of businesses are subject to liability in actions initiated by public officials.[12]

---

[12] We have no occasion in the present case to consider the circumstances in which a civil action under the UCL may be brought against a public utility by a *private party* acting as a private attorney general when a parallel enforcement proceeding is pending in the PUC. We note, however, that when a UCL action is brought by one or more private parties, there may be more of a risk of a lack of coordination with PUC officials, and thus greater danger that the civil action might undermine an ongoing regulatory program or policy of the PUC. In such circumstances, a court, faced with the question whether the civil action is barred by section 1759(a), may deem it appropriate to solicit the views of the PUC regarding whether the action is likely to interfere with the PUC's performance of its duties.

## III

The judgment of the Court of Appeal is reversed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.