[No. G029261. Fourth Dist., Div. Three. June 21, 2004.]

CITY OF ANAHEIM, Plaintiff and Appellant, v.
PACIFIC BELL TELEPHONE COMPANY, Defendant and Respondent.

840

---

**COUNSEL**

Jack L. White, City Attorney, and Moses W. Johnson IV, Deputy City Attorney, for Plaintiff and Appellant.

Pacific Telesis Group Legal Department and David J. Benner for Defendant and Respondent.

## OPINION

**RYLAARSDAM, J.**—Plaintiff City of Anaheim appeals from a judgment entered in favor of defendant Pacific Bell Telephone Company. The court sustained defendant's demurrer to the complaint without leave to amend on the ground it lacked subject matter jurisdiction because exclusive jurisdiction rests with the California Public Utilities Commission (PUC). Plaintiff contends the superior court has concurrent jurisdiction to adjudicate which of the parties must bear the cost of relocating defendant's overhead facilities underground.

We issued an opinion holding that the PUC had exclusive jurisdiction over the controversy because it concerned a matter of statewide importance which the PUC continued to regulate. The California Supreme Court granted review but deferred further action pending its determination of a related issue in *People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132 [7 Cal.Rptr.3d 315, 80 P.3d 201] (*Orloff*). Thereafter it transferred this matter back to us to vacate our prior opinion for reconsideration in light of that decision. Having reviewed the case in the context of *Orloff*, we again conclude the trial court correctly sustained the demurrer without leave to amend and affirm the judgment.

### FACTS

Pursuant to defendant's tariff rule 32 (Schedule Cal. P.U.C. No. A2, 2.1, 2.1.32 Rule 32 (rule 32)), plaintiff enacted an ordinance requiring all utility companies to move their overhead facilities (e.g., poles, wires, conductors, transformers and the like) underground. Subsequently, after properly noticed public hearings, plaintiff passed a resolution that created an underground district in Peralta Hills. The resolution declared creation of the district "will avoid or eliminate an unusually heavy concentration of overhead electric facilities"; the "district passes through an area of unusual scenic interest to the general public . . ."; the right-of-way on which the utilities were then located is "extensively used by the general public and carries a heavy volume of pedestrian or vehicular traffic . . ."; and placing utilities underground "will improve safety by removing obstructions to pedestrian and vehicular visibility . . . ." The language of plaintiff's resolution parallels that in rule 32 which sets out the circumstances under which defendant must pay the cost of conversion.

Plaintiff notified defendant that, under the resolution, defendant was obligated to move its overhead facilities in the district underground at its sole expense. Defendant agreed to make the conversion but only if it was not required to pay for it. Defendant maintained that the district "[did] not qualify" under rule 32 because it was established for the sole benefit of the residents of the district. It also noted the district was not set up "to avoid or eliminate an unusually heavy concentration of aerial facilities."

Plaintiff decided to pay for the conversion "under protest" so that it would be completed timely, but reserved all rights "to contest responsibility for the cost of constructi[on] . . . ." The parties executed an agreement memorializing these terms.

Plaintiff then filed suit in the superior court. Its first amended complaint sought declaratory relief and monetary damages, under various Public Utilities Code sections, for the expense of moving the facilities underground. Defendant demurred to the complaint on the ground the superior court lacked subject matter jurisdiction because exclusive jurisdiction rested with the PUC.

After the court overruled the demurrer, defendant filed a petition for a writ of mandate (*Pacific Bell Telephone Company v. Superior Court* (Jan. 31, 2001, G028460).) (We take judicial notice of the briefs and pleadings in that writ proceeding.) We invited plaintiff to file a letter brief, noting, "It appears this issue has already been decided adversely to [plaintiff] in a prior matter," i.e., *City of Anaheim v. Southern California Edison Company* (Dec. 29, 1997, G016782) [nonpub. opn.]. Subsequently, we issued an alternative writ of mandate ordering the trial court to vacate its order overruling the demurrer "and to issue a new order sustaining the demurrer without leave to amend," or to show cause why we should not issue a peremptory writ. The superior court complied with the alternative writ, sustained the demurrer without leave to amend, and dismissed the action. This appeal followed.

## DISCUSSION

The sole question is whether the PUC has exclusive jurisdiction to resolve the dispute about who must pay for the relocation of defendant's overhead facilities to underground.

■ As set out in article XII, section 8 of the California Constitution, "A city . . . may not regulate matters over which the Legislature grants regulatory power to the [Public Utilities] Commission." In such matters, the jurisdiction of the PUC is exclusive. (*Southern Cal. Gas Co. v. City of Vernon* (1995) 41 Cal.App.4th 209, 215 [48 Cal.Rptr.2d 661].) The Legislature has given the PUC broad powers. For example, it is authorized to do *everything*

necessary to exercise its jurisdiction. (Pub. Util. Code, § 701 [all further statutory references are to this code unless otherwise noted].) Further, it may require utilities to operate so as to promote health and safety, and may set construction and equipment standards. (§ 768.) This exclusivity provides uniformity throughout the state and eliminates conflicting regulations arising out of " 'local judgment and prejudice.' . . ." (*Los Angeles Ry. Corp. v. Los Angeles* (1940) 16 Cal.2d 779, 787 [108 P.2d 430].)

■ In conformity with this policy, section 1759, subdivision (a) provides that only the Supreme Court and Courts of Appeal have jurisdiction "to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties . . . ." Superior courts do have limited jurisdiction. A party may bring a civil action in superior court for damages against a utility "that does any act prohibited—or omits to do any act required—'by . . . any law of this State . . .' (§ 2106)." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 916 [55 Cal.Rptr.2d 724, 920 P.2d 669] (*Covalt*).) But "section 1759 prevails over section 2106 unless the superior court action 'would not interfere with or obstruct the commission in carrying out its own policies.' " (*Id.* at p. 944.)

Whether a decision of a superior court would impede the PUC was the issue in *Orloff*. There, district attorneys for several counties filed an action against the defendants in the name of the People for alleged improper marketing of certain telecommunications services. The complaint sought civil penalties, restitution, and injunctive relief for violation of the unfair competition law (Bus. & Prof. Code, §§ 17200, 17500). The trial court sustained the defendants' demurrer on the ground it had no subject matter jurisdiction because a related administrative proceeding, consisting of consolidated complaints made by various private consumer advocates, was pending before the PUC. The administrative action challenged not only acts that were the subject of the civil complaint, but also additional marketing practices. The Court of Appeal affirmed the decision, explaining that continuation of the civil action created a potential for conflicting decisions, and the fact that the People had brought the action was insufficient to overcome the preemption set out in section 1759, subdivision (a).

While the Supreme Court had the case under review, the PUC issued its final decision, imposing a fine and requiring the defendants to allow their customers to cancel any challenged services. The ruling was limited only to remedies provided for violations of the Public Utilities Code. It specifically "[did] not adjudicate the Unfair Competition Law claims" identical to those raised in the civil action. (*Orloff, supra*, 31 Cal.4th at p. 1143, italics omitted.)

■ The Supreme Court reversed the decision of the Court of Appeal. It first noted that section 1759, subdivision (a) "is not intended to, and does not, immunize or insulate a public utility from any and all civil actions brought in superior court. [Citations.]" (*Orloff, supra,* 31 Cal.4th at p. 1144.) Rather, several statutes specifically authorize civil actions against public utilities. (*Ibid.*) In addition to section 2106 allowing a civil suit for damages, the basis for the action in the present case, other statutes provide for enforcement of PUC regulations and policies. (§§ 2101, 2105; see also Gov. Code, § 26509; *Orloff, supra,* 31 Cal.4th at pp. 1149–1150.)

■ The court drew on its analysis in *Covalt, supra,* 13 Cal.4th 893, which had examined the interplay between section 2106 and section 1759, subdivision (a). In *Covalt,* the court set out a three-pronged test to determine whether a superior court action brought by private parties would impede the PUC's execution of its duties and thereby be precluded under section 1759, subdivision (a). These factors were whether the PUC was authorized to make a certain policy, whether it had adopted regulations to effect that policy, and whether maintenance of the superior court action would interfere with that policy. (*Orloff, supra,* 31 Cal.4th at p. 1145.)

Reviewing the instant case in the context of *Orloff,* it is plain the claims asserted in this case concern a matter about which the PUC is authorized to make policy, over which it has assumed jurisdiction, and which it continues to regulate. (*Orloff, supra,* 31 Cal.4th at p. 1145; *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 275 [115 Cal.Rptr.2d 874, 38 P.3d 1098].) In 2000, the PUC issued an order to implement an assembly bill that required it to conduct a study to improve its rules for conversion of overhead facilities. (Cal. P.U.C. Order Instituting Rulemaking Into Implementation of Assembly Bill 1149, Regarding Underground Electric and Communications Facilities (Dec. 11, 2001) Dec. No. 01-12-009 [2001 Cal.PUC LEXIS 1067, 3] (Dec. No. 01-12-009).) That decision "revise[d] the rules governing the state's program to convert overhead electric and communications distribution and transmission lines to underground . . . [including an] order [for] the creation of an updated Undergrounding [*sic*] Planning Guide. In addition, the Decision identifies issues for a Phase 2 proceeding." (Cal. P.U.C. Order Instituting Rulemaking Into Implementation of Assembly Bill 1149 Regarding Underground Electric and Communications Facilities (Mar. 6, 2002) Dec. No. 02-03-026 [2002 Cal.PUC LEXIS 137, 2].)

Dec. No. 01-12-009 recounted testimony from public hearings about "the significant demographic and social equity issues that are involved in a city's choice as to what neighborhoods are chosen for . . . funding." (Dec. No. 01-12-009, *supra,* at p. 11.) It further noted conversion funds are limited, creating "the equitable issue of how to balance those who receive the benefits

of undergrounding [*sic*] against those who pay the cost." (*Id.* at p. 10.) It is reasonable to conclude the PUC will continue to oversee and regulate where and when utility facilities are put underground for the foreseeable future. Thus, the first two prongs of the *Covalt* test, as reiterated by *Orloff*, are met.

We are left to consider the third prong, i.e., whether a decision by the superior court would obstruct or interfere with PUC policy regarding relocation of overhead utility infrastructure underground. (*Covalt, supra,* 13 Cal.4th at pp. 918, 935.) More specifically, which body is authorized to decide whether plaintiff's district satisfies the rule 32 criteria? Under the circumstances here, it is the PUC.

■ The PUC " 'has been held to have paramount jurisdiction in cases where it has exercised its authority, and its authority is pitted against that of a local government involving a matter of statewide concern. . . . [Citations.]' [Citation.]" (*San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 797 [75 Cal.Rptr.2d 534].) " '[T]he construction and maintenance of telephone lines within a city . . . [has] been declared [a] matter[] of statewide concern. . . .' [Citation.]" (*Id.* at p. 798.) The issue here, whether plaintiff's underground district meets the standards set by rule 32, goes to the heart of these concerns.

It is not just a matter of applying or enforcing rule 32, as plaintiff argues. Nor is the issue whether or not plaintiff's suit "challenges" rule 32. Rather, we must decide if "plaintiff's attempt to obtain relief under section 2106 may have the *effect* of interfering with the commission's regulation of utilities." (*Cundiff v. GTE California Inc.* (2002) 101 Cal.App.4th 1395, 1405 [125 Cal.Rptr.2d 445].) Under these facts it will.

In *Orloff*, in finding that assumption of jurisdiction by the superior court would not interfere with PUC jurisdiction, the court relied heavily on the fact that the civil suit was brought on behalf of the People. Acknowledging the breadth of the "constitutional and statutory authority of the PUC to regulate public utilities," it stated that "where a civil action brought by public prosecutors in the name of the People against a public utility does not usurp any exclusive power of the PUC and is authorized expressly by statute, we properly may discern a legislative intent that the superior court and the PUC possess concurrent subject matter jurisdiction, and that public prosecutors and PUC officials share the authority and responsibility to prosecute violations of these laws." (*Orloff, supra,* 31 Cal.4th at pp. 1150–1151.) In allowing the superior court action to proceed, *Orloff* held that the false advertising claims raised by the plaintiffs "[did] not involve . . . any . . . matter assigned to the exclusive jurisdiction of the PUC." (*Id.* at p. 1155.)

The present case follows a different pattern. Here, we have a suit seeking reimbursement for plaintiff's individual expenses, not an action for the benefit of the entire state. That plaintiff is a city does not change the nature of the litigation. Rather, this action has the potential to interfere with the equitable determination of the order in which communities throughout the state should have their overhead facilities moved underground, a matter of statewide concern over which the PUC has jurisdiction. Thus, contrary to *Orloff*, here there is an "existing policy or ongoing regulatory effort by the PUC that would be frustrated by the present action." (*Orloff, supra*, 31 Cal.4th at p. 1152.)

Moreover, this case does not involve a disclaimer by the PUC of responsibility for the issue, or even a shared responsibility, as occurred in *Orloff*. Nor, other than the general language of section 2106, is there any statute specifically authorizing plaintiff's action.

Consistent with *Orloff*, we do not agree that the PUC has the exclusive jurisdiction to decide every issue arising under rule 32, as defendant maintains. For example, if there were no dispute that a utility was required to pay for relocation of overhead facilities and it failed to do so, the superior court would have jurisdiction to rule on a complaint for payment. (§ 2106; see *Vila v. Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469, 477 [43 Cal.Rptr. 654].) Further, defendant overstates the effect of the superior court's potential exercise of jurisdiction when it claims the "result *inevitably* will be a patchwork of differing standards" throughout the state. (Italics added.) Nevertheless, the issue remains one of statewide concern over which the PUC has authority, for which it has adopted regulations, and which it continues to regulate. (*Orloff, supra*, 31 Cal.4th at p. 1145.)

■ The parties debate whether the payment plaintiff seeks is damages or reparations. But that begs the question. The real issue is who is obligated to pay. The appellation given to the payment has no effect on that determination. Likewise, whether payment is made prior to the work being done or thereafter is an artificial distinction without legal consequences. Because the PUC has exclusive jurisdiction to decide whether defendant is required to pay for putting its facilities underground, it has the concomitant authority to order defendant to pay plaintiff if plaintiff prevails.

We are not basing our decision here on the ruling in *City of Anaheim v. Southern California Edison Company, supra*, G016782. Defendant has not provided any authority as to why that case should control, and we treat the issue as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

Sills, P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2004.