Filed 3/26/14 Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMPARO RIVERA MATA et al., | A138568 |
| Plaintiffs and Appellants, | |
| v. | (Marin County |
| | Super. Ct. No. CV 083558) |
| PACIFIC GAS AND ELECTRIC | |
| COMPANY et al., | |
| | ORDER MODIFYING OPINION |
| Defendants and Respondents. | AND DENYING REHEARING; |
| | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 28, 2014, be modified in the following particular:

On page 6, lines 4-7, delete the sentence and citation:

The order begins with this admonition: "*Commission stresses that the standards establish only minimum clearance levels and do not prescribe either maximum clearances or specific or comprehensive tree-trimming procedures.*" (*Id*. at p. 693, italics added.)

The petitions for rehearing are denied.  There is no change in the judgment.

Dated: _____

_____

Pollak, Acting P. J.

Superior Court of Marin County, No. CV 083558, Lynn Duryee, Judge.


Counsel for Plaintiffs and Appellants:          Gerald Peters


Counsel for Defendants and Respondents

Pacific Gas and Electic Company:          Kenneth E. Lee


                                          SEDGWICK LLP

                                          Gayle L. Gough

                                          Kirk C. Jenkins

                                          Kristie A. Tappan


The Davey Tree Expert Company:          NIXON PEABODY LLP

                                          Robert M. Blum

                                          Aldo E. Ibarra

Filed 2/28/14 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMPARO RIVERA MATA et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> PACIFIC GAS AND ELECTRIC COMPANY et al., <br><br>     Defendants and Respondents. | A138568 <br><br> (Marin County <br> Super. Ct. No. CV 083558) |

Plaintiffs are the heirs of Carlos Rivera Olvera (decedent) who, while trimming a redwood tree on September 18, 2007, was electrocuted by a high voltage power line of defendant Pacific Gas and Electric Company (PG&E). Defendant The Davey Tree Expert Company is a vegetation pre-inspection contractor that contracted with PG&E to perform inspections to ensure that proper clearances were maintained between PG&E power lines and surrounding vegetation. Plaintiffs' complaint alleged several causes of action against PG&E and The Davey Tree Expert Company and other defendants, many of which have been resolved by summary adjudication or settlement.

What remains and is now before us is the trial court's order dismissing causes of action against both defendants for negligence and against PG&E for premises liability, which claims are based on the allegation that defendants "negligently, carelessly, recklessly, or in some other actionable manner, failed to inspect the power lines and trees in the vicinity of the power lines, and failed to maintain an adequate clearance of the power lines, so that the branches of the trees on the premises had grown above and around the 12,000-volt line. Said [defendants] knew, or in the exercise of reasonable care should have known, that the conditions constituted a dangerous condition and

1

unreasonable risk of harm to those who would foreseeably be on the premises and in the vicinity of the trees and power lines, and that the danger would not be apparent to people such as the decedent." The trial court granted the defendants' motion to dismiss "because this court lacks subject matter jurisdiction under Public Utilities Code section § 1759."[1] Plaintiffs have timely appealed.[2]

**Background**

Although plaintiffs' complaint alleges that the power line in question did not comply with the minimum vegetation clearance requirements established by the California Public Utilities Commission (PUC or commission), summary adjudication previously was granted against plaintiffs on their cause of action for negligence per se, based on undisputed evidence that the clearance did comply with the PUC's general order No. 95. Plaintiffs' opposition to the motion to dismiss and its appeal do not question this premise. However, plaintiffs contend that the PUC's minimum clearance requirements do not relieve the utility or its contractor from the duty to exercise reasonable care to maintain the power lines in a safe condition if compliance with the minimum requirements is not sufficient to do so, and that the superior court retains jurisdiction to remedy breaches of that duty. That was the view of a different trial judge who denied defendants' earlier motion for summary judgment: "Assuming defendants' undisputed evidence demonstrates compliance with the statutory and regulatory clearance requirements for Major Wood Stems found in PUC General Order 95 . . . , that fact does not establish, as a matter of law, that defendants did not breach their duty of due care to maintain the power lines in a safe condition at all times and places and under the

---

[1] All statutory references are to the Public Utilities Code.

[2] Subsequent to oral argument and submission of the case for decision, the parties submitted a joint request for the court to dismiss the appeal, based on a settlement agreement conditioned on "dismissal before an opinion on appeal is issued, and confidentiality as permitted by law." We question the propriety of this condition and in all events deny the request.

PG&E's request that we take judicial notice of an amicus curiae brief filed by the PUC in the *Sarale* case discussed, *post,* and of portions of general order No. 95 is granted.

2

changing circumstances of the particular case. [Citations.] [¶] 'Compliance with the general orders of the [PUC] does not establish as a matter of law due care by the power company, but merely relieves it "of the charge of negligence per se. It does not affect the question of negligence due to the acts or omissions of the company as related to the particular circumstances of the case." [Citation.]' (*Nevis v. P.G. & E.* (1954) 43 Cal.2d 626, 630.) Safety regulations prescribe only the minimum care required, 'and it is usually a matter for the jury to determine whether something more than the minimum was required under the evidence in the case. [Citations.]' (*Pennington v. Southern Pacific Co.* (1956) 146 Cal.App.2d 605, 613-614.)"

The judge hearing defendants' subsequent motion to dismiss reached a different conclusion. This judge concluded that under the three-part test established by the Supreme Court in *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 923, 926, 935 (*Covalt*), and applied in what the court regarded as an analogous case, *Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225 (*Sarale*), plaintiffs' claim falls within the exclusive jurisdiction of the PUC.

**Analysis**

Although the court in *Sarale* was divided as to the outcome in that case, there was no disagreement as to the legal framework within which the issues must be analyzed. (*Sarale, supra,* 189 Cal.App.4th 225.) We adopt that court's summary of the governing law:

" 'The commission is a state agency of constitutional origin with far-reaching duties, functions, and powers . . . including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures.' (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 905, . . . citing Cal. Const., art. XII, §§ 1–6.) In addition, the Legislature, which has the ' " 'plenary power . . . to confer additional authority and jurisdiction upon the commission,' " ' can broaden the commission's authority. (*Consumers Lobby Against Monopolies, supra,* at p. 905, . . . quoting Cal. Const., art. XII, § 5).

3

"Employing its plenary power, the Legislature enacted the Public Utilities Act (§ 201 et seq.), which 'vests the commission with broad authority to "supervise and regulate every public utility in the State." ' (*Covalt, supra,* 13 Cal.4th at p. 915 . . . .) This broad authority authorizes the commission to ' "do all things, whether specifically designated in [the Public Utilities Act] or in addition thereto, which are necessary and convenient" in the exercise of its jurisdiction over public utilities.' (*Ibid.,* italics omitted.) ' "The commission's authority has been liberally construed" [citation], and includes not only administrative but also legislative and judicial powers.' (*Ibid.*)

"Commission action is subject to judicial review, the 'manner and scope' of which is established by the Legislature. (Cal. Const., art. XII, § 5.) 'Pursuant to this constitutional provision, the Legislature enacted article 3 of chapter 9 of the Public Utilities Act, entitled "Judicial Review" (§ 1756 et seq.),' which 'prescribes a method of judicial review that is narrow in both "manner and scope." ' (*Covalt, supra,* 13 Cal.4th at p. 915 . . . .) Among the provisions of that article is subdivision (a) of section 1759, which provides that '[n]o court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court.'

"Despite this limitation on the jurisdiction of trial courts to review commission rules and decisions, the Legislature has provided for a private right of action against utilities for unlawful activities and conduct. Specifically, section 2106 provides for an action to recover for loss, damage, or injury 'in any court of competent jurisdiction' by any corporation or person against '[a]ny public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission.'

" '[R]ecognizing a potential conflict between sections 2106 and 1759,' the California Supreme Court 'has held section 2106 "must be construed as limited to those

situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." ' (*Koponen v. Pacific Gas & Elec. Co.* (2008) 165 Cal.App.4th 345, 351 . . . .)

"In *Covalt,* the Supreme Court ' "established a three-part test to determine whether an action is barred by section 1759: (1) whether the commission had the authority to adopt a regulatory policy; (2) whether the commission had exercised that authority; and (3) whether the superior court action would hinder or interfere with the commission's exercise of regulatory authority." ' . . .)" (*Sarale, supra,* 189 Cal.App.4th at pp. 235-236; see also, e.g., *People ex. rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1144-1145; *Ford v. Pacific Gas & Electric Co.* (1997) 60 Cal.App.4th 696, 700-701.)

As the trial court held, there is no question here but that the first part of this three-prong test is satisfied. Disagreement centers on the application of the second and third prongs of the test. Plaintiffs contend that although the PUC has exercised its authority to specify normal minimum clearance requirements, it has not exercised its authority to modify the utility's duty to use reasonable care in maintaining clearance greater than the minimum if necessary at a particular location to ensure the safety of others, nor has it attempted to define the extent of clearance beyond the minimum that may be required at particular locations. Permitting the courts to impose liability for unreasonably failing to maintain greater clearance than the recommended minimum, plaintiffs contend, does not in any way hinder or interfere with the PUC's exercise of authority.

Rules governing the construction and maintenance of overhead electric lines are set forth in the PUC's general order No. 95. Rule 11 within the general order states that "[t]he purpose of these rules is to formulate, for the state of California, uniform requirements for overhead electric line construction, the application of which will insure adequate service and secure safety to persons engaged in the construction, maintenance, operation or use of overhead electrical lines and to the public in general." Rule 35 of the general order (rule 35) governs tree trimming. The evolution of this rule prior to its revision in January 2012 is summarized in the *Sarale* opinion. (*Sarale, supra,* 189 Cal.App.4th at pp. 237-239.) The order adopted by the commission on January 23, 1997

5

in *Re San Diego Gas and Electric Co.* (1997) 70 Cal.P.U.C.2d 693, which was in effect at the time of the decedent's accident, "adopt[ed] final standards for trimming trees which are in proximity to overhead electric lines of utilities within our jurisdiction." (*Id.* at p. 694.) The order begins with this admonition: "*Commission stresses that the standards establish only minimum clearance levels and do not prescribe either maximum clearances or specific or comprehensive tree-trimming procedures.*" (*Id.* at p. 693, italics added.) In the discussion portion of its opinion, the commission states: "*We do not need to determine what the appropriate maximum clearances should be*, but we do have to determine the minimum safe clearances and a reasonable level of expense for the utility to maintain such clearances." (*Id.* at p. 697, italics added.) In its discussion of the jurisdiction of the commission, the opinion states: "*Our action today does not limit or mandate the maximum limits of tree trimming*, or specify the manner in which trimming activities must be accomplished. We are selecting a safe minimum standard to insure system safety and reliability, but *we are not adopting comprehensive rules and procedures to specify how the minimum obligation of the utilities must be accomplished.* [¶] In recognition of this circumstance, we will decline to adopt a declaration of our jurisdiction as part of our order. In our view, such a course would be fraught with the danger of acting outside of our authority in this proceeding." (*Id.* at p. 699, italics added.)

An appendix to the 1997 order that adopted the rule 35 standards provides, with certain inapplicable exceptions: "Where overhead wires pass through trees, safety and reliability of service demand that tree trimming be done in order that the wires may clear branches and foliage by a reasonable distance. The minimum clearances established in [an accompanying table] measured between line conductors and vegetation under normal conditions, shall be maintained." (*Re San Diego Gas and Electric Co., supra,* 70 Cal.P.U.C.2d at pp. 701-702.) A second appendix, appendix E, provides "guidelines to Rule 35" which state: "The radial clearances shown below are minimum clearances that should be established, at time of trimming, between the vegetation and the energized conductors and associated live parts where practicable. *Vegetation management practices*

6

*may make it advantageous to obtain greater clearances than those listed below*." (*Id.* at p. 705, italics added.)

Rule 35 was modified in 2005,[3] 2009,[4] and by PUC Decision No. 12-01-032 on January 12, 2012 (2012 Cal.P.U.C. Lexis 40). Although the changes made subsequent to decedent's accident may not bear on the standard of care governing defendants' conduct on an earlier date, they do bear on whether recognizing the court's jurisdiction over plaintiffs' claim threatens to hinder or interfere with the exercise of the commission's jurisdiction. In fact, neither amendments that were made to rule 35 in 2005 and 2009 nor the most recent amendments of the rule make any change with respect to the nature of the specified clearance distances in rule 35: these distances are minimums only and greater clearances may be advisable in some circumstances. The guidelines to the rule in appendix E now read: "The radial clearances shown below are recommended minimum clearances that should be established, at time of trimming, between the vegetation and the energized conductors and associated live parts where practicable. *Reasonable vegetation management practices may make it advantageous for the purposes of public safety or service reliability to obtain greater clearances than those listed below to ensure compliance until the next scheduled maintenance. Each utility may determine and apply additional appropriate clearances beyond clearances listed below,* which take into consideration various factors, including: line operating voltage, length of span, line sag, planned maintenance cycles, location of vegetation within the span, species type, experience with particular species, vegetation growth rate and characteristics, vegetation management standards and best practices, local climate, elevation, fire risk . . . ." (Cal.P.U.C. Dec. No. 12-01-032, pp. 356-357, italics added.)[5]

---

[3] PUC Decision No. 05-01-030 (Jan. 13, 2005) 2005 Cal.P.U.C. Lexis 2.

[4] PUC Decision No. 09-08-029 (Aug. 25, 2009) 2009 Cal.P.U.C. Lexis 433.

[5] As worded in the interim revisions to appendix E of general order No. 95, adopted in 2009, the guideline read: "The radial clearances shown below are minimum clearances that should be established, at time of trimming, between the vegetation and the energized conductors and associated live parts where practicable. *Reasonable vegetation management practices may make it advantageous to obtain greater clearances than those*

7

Thus, the PUC rules and prior orders repeatedly make clear that while a utility normally must maintain specified minimum clearances between its overhead electric lines and adjacent trees, the commission leaves to the determination of the utility whether greater clearances are necessary at particular locations to accomplish the purposes of rule 35, including to "secure safety . . . to the public in general." Nowhere in its rules or orders does the commission suggest that in making such determinations, the utility is relieved of its obligation to exercise reasonable care to avoid causing harm to others, or relieved of its responsibility for failing to do so. PG&E does have "a duty to make the wires safe under all the exigencies created by the surrounding circumstances." (*Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 815.) Failure to satisfy that duty subjects the utility to liability in judicial proceedings for damages to those harmed by its negligence. (E.g., *Krongos v. Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 395-397; *Pappert v. San Diego Gas & Electric Co.* (1982) 137 Cal.App.3d 205; cf. *Laabs v. Southern California Edison Co.* (2009) 175 Cal.App.4th 1260, 1269-1271.)

As recognized in the case relied on by the trial court in denying summary judgment, "Compliance with the general orders of the [PUC] does not establish as a matter of law due care by the power company, but merely relieves it 'of the charge of negligence *per se.* It does not affect the question of negligence due to the acts or omissions of the company as related to the particular circumstances of the case.' " (*Nevis v. Pacific Gas & Electric Co., supra,* 43 Cal.2d 626, 630.) Although a case before the PUC involving the imposition of penalties rather than an award of damages, the decision in *In re Southern California Edison Co.* (Cal.P.U.C. Apr. 22, 2004) No. 04-04-065 [2004 Cal.P.U.C. Lexis 207], reconfirms that compliance with the prescribed minimum standards is no shield against liability for failing to exercise reasonable care in determining whether the minimum should be exceeded. "Edison has argued that if it has complied with the maintenance intervals of GO [General Order] 165, it should be

---

*listed below.*" (Cal.P.U.C. Dec. No. 09-08-029, *supra*, p. 509 [2009 Cal.P.U.C. Lexis 433], italics added.)

excused from liability for GO violations, for example, if a tree has grown enough since its last inspection that it is less than the minimum GO clearance from a power line. We do not agree. GO 165 sets minimum intervals for maintenance inspections. Circumstances may dictate that shorter intervals are required in particular cases. For example, an exceptionally wet or mild winter may result in faster vegetation growth. Simply complying with the minimum intervals set by our GO will not be sufficient to deal with that situation and the utility should be presumed to know that." (*Id.* at pp. 23-24.)

Defendants' argument, and the trial court's order, rest primarily on the decision in *Sarale*. In that case two different landowners sought to obtain declaratory and injunctive relief and in one case damages from PG&E for trimming trees at greater distances from its power lines than the minimum clearance distances specified in the PUC general order. The landowners claimed, among other things, that the scope of power line easements authorized PG&E "to trim no further than the distance established by" the PUC (*Sarale, supra,* 189 Cal.App.4th at p. 233) and that PG&E had trimmed "beyond *what the commission has mandated.*" (*Id.* at p. 242; italics in original.) In response to PG&E's argument that the court lacked jurisdiction "to interfere with the commission's regulation, supervision and inspection of PG&E's vegetation management program" (*id.* at p. 235), PG&E's demurrers were sustained without leave to amend and the rulings were upheld on appeal. The Court of Appeal held that "trial courts lack jurisdiction to adjudicate claims that a power utility has engaged in excessive trimming or unreasonable vegetation management when the utility has acted under guidelines or rules set forth by the commission. Section 1759 safeguards the commission's ability to implement statewide safety protocols from being undermined by an unworkable patchwork of conflicting determinations regarding what constitutes necessary or proper management of power lines. In short, challenges to PG&E's tree trimming as unreasonable, unnecessary, or excessive lie within the exclusive jurisdiction of the commission to decide." (*Id.* at p. 231.) In a strong dissent, Justice Robie argued that the majority "fail[ed] to explain how allowing these lawsuits to go forward will interfere with the commission's exercise of its regulatory authority—*given that the plaintiffs in both cases do not challenge any*

9

*trimming that falls within the minimum clearances the commission has established.*" (*Id.* at p. 252; italics in original.)

It is unnecessary to take sides with either the majority or dissent in *Sarale* because there is a fundamental difference between the claims in that case and plaintiffs' claim here. In *Sarale,* the landowners were attempting to prohibit PG&E from trimming more than the minimum required by the PUC, although—as indicated above—the PUC has made unmistakably clear that in some cases safety or other considerations require more than minimum clearances and that the utility should use its judgment to go beyond the minimum when necessary to ensure the reliability of service or public safety. In the view of the majority, recognition of the landowners' claims would have effectively countermanded the authorization that the PUC granted the utility to make that determination and to extend clearance beyond the minimum when necessary to ensure service reliability or public safety. Here, on the other hand, plaintiffs' claims do not conflict with the PUC rule authorizing the utility to make a reasonable determination whether safety or other considerations require trimming beyond the minimum clearance. Permitting plaintiffs to prosecute in superior court their claim for having failed to use due care in making such a determination does not hinder or interfere with the exercise of the PUC's authority. To the contrary, awarding damages to those injured by the utility's failure to make such a reasonable determination as anticipated by the PUC complements and reinforces rule 35. A superior court action for such damages is "in aid of, rather than in derogation of, the PUC's jurisdiction." (*Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, 275; *Vila v. Tahoe Southside Water Utility* (1965) 233 Cal.App.2d 469, 479; see also *People ex. rel. Orloff v. Pacific Bell, supra*, 31 Cal.4th at pp. 1146-1148.)

Unlike the situation in *Sarale,* denying plaintiffs the right to pursue their claim in superior court would deny them any means of recovery. In *Sarale* the majority opinion explains that the landowners could seek injunctive relief from the PUC to prohibit excessive tree trimming. (*Sarale, supra,* 189 Cal.App.4th at pp. 243-244.) However, the commission has recognized its inability to determine prospectively whether clearance beyond the minimum is necessary or advisable at every location where power lines are

10

situated throughout the state, and it has expressly declined any attempt to do so. The PUC cannot evaluate and rectify individual claims for damages resulting from a utility's failure to exercise reasonable care in making that determination at a particular location. (*Vila v. Tahoe Southside Water Utility, supra,* 233 Cal.App.2d at p. 479; *Hartwell Corp. v. Superior Court, supra,* 27 Cal.4th at p. 277 ["[T] he PUC can redress violations of the law or its orders by suit (§ 2101), by mandamus or injunction (§§ 2102-2103), by actions to recover penalties (§§ 2104, 2107), and by contempt proceedings (§ 2113), but these remedies are essentially prospective in nature. They are designed to stop the utilities from engaging in current and ongoing violations and do not redress injuries for past wrongs."]; see also *People ex. rel. Orloff v. Pacific Bell, supra,* 31 Cal.4th at p. 1148.) Thus, although some language in the *Sarale* majority opinion may be read to suggest that the courts have no jurisdiction to consider any claim involving alleged inadequate tree trimming around regulated power lines, such a conclusion is not supported by the facts of that case, the pronouncements of the PUC, section 2106, or fundamental principles of equity and the role of the courts.

In concluding, as we do, that the court is not precluded by section 1759 from entertaining plaintiffs' claim, we of course make no suggestion as to the ultimate merits of the claim. Many other issues remain to be considered. We hold only that the superior court has jurisdiction over the matter, and that plaintiffs' claim for damages based on the allegation that PG&E breached its duty to maintain adequate clearance beyond the prescribed minimum does not rest on an issue within the exclusive jurisdiction of the PUC.

### Disposition

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.[6] Plaintiffs shall recover their costs on appeal.

---

[6] In view of our determination that plaintiffs' claim is not barred by section 1759, it is not necessary to consider other issues presented in the appeal as to defendant The Davey Tree Expert Company.

11

 

 

_____

Pollak, Acting P.J.

We concur:

_____

Siggins, J.

_____

Jenkins, J.

A138568

Superior Court of Marin County, No. CV 083558, Lynn Duryee, Judge.


Counsel for Plaintiffs and Appellants:        Gerald Peters


Counsel for Defendants and Respondents
Pacific Gas and Electic Company:        Kenneth E. Lee

        SEDGWICK LLP
        Gayle L. Gough
        Kirk C. Jenkins
        Kristie A. Tappan


The Davey Tree Expert Company:        NIXON PEABODY LLP
        Robert M. Blum
        Aldo E. Ibarra


A138568