Filed 10/10/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FILOMENA GUERRERO et al., <br><br>       Plaintiffs and Appellants, <br><br> v. <br><br> PACIFIC GAS & ELECTRIC COMPANY et al., <br><br>       Defendants and Respondents. | A139429 <br><br> (City and County of San Francisco Super. Ct. No. CGC12523596) |

Plaintiffs Filomena Guerrero et al., sued Pacific Gas & Electric Co.[1] for deceptively representing to the California Public Utilities Commission[2] and the public how much revenue it required to provide safe and reliable natural gas service. The class action complaint sought restitution and disgorgement of profits for PG&E's wrongful diversion of more than $100 million in rates it collected over a thirteen year period that should have been expended on natural gas pipeline safety projects.

PG&E demurred. It argued that Public Utilities Code section 1759[3] foreclosed the plaintiffs' claims because the PUC had exercised jurisdiction over PG&E's rates, and a

_____

[1]Hereinafter "PG&E."

[2]Hereinafter "PUC" or "commission."

[3]Further statutory references are to the Public Utilities Code unless otherwise designated.

1

judgment for plaintiffs in a civil action would interfere with the continuing jurisdiction of the PUC in pending regulatory matters against PG&E. The trial court sustained PG&E's demurrer without leave to amend. Plaintiffs appeal from the ensuing judgment.

We agree with the trial court that this putative class action would interfere with the PUC's performance of its duties and affirm the judgment for PG&E.

## BACKGROUND

On September 9, 2010, a PG&E natural gas pipeline exploded in San Bruno, CA, causing death, great physical injuries, and extensive property damage. Following the explosion, various governmental entities commenced investigations into the incident and into PG&E's business practices. As plaintiffs alleged, the Public Utilities Commission "initiated its own investigation and retained an independent firm, Overland Consulting, LLC, . . . to review PG&E's gas transmission safety-related activities from a financial and regulatory audit prospective. The PUC and Overland examined PG&E's natural gas transmission and storage expenditures over the prior 15 years to determine whether the amounts that the PUC had authorized for gas pipeline safety investments were actually spent on safety investments. Authorized revenue was compared with actual costs for operations and maintenance expenses, capital expenditures, and rate-base expenditures. [The] audit also compared authorized revenue requirements to actual revenue and actual return-on-equity to authorized levels."

Plaintiffs filed this action against PG & E seeking redress for PG&E's alleged misappropriation of over $100 million in authorized rates that it should have used for safety-related projects. According to the complaint, PG&E misrepresented and concealed material facts from plaintiffs when it used money collected from ratepayers to pay shareholders and provide bonuses to its executives instead of spending the money on infrastructure and safety measures. Additionally, the class alleged that PG&E's negligent handling of the pipe that exploded in San Bruno was unlawful and arose from PG&E's corporate culture that valued profits over safety. Plaintiffs contended that PG&E's

2

actions constituted an unlawful business practice within the meaning of California Business and Professions Code section 17200, et seq.

PG&E demurred to the complaint on the ground that under section 1759, subdivision (a) the superior court lacked jurisdiction because the litigation would interfere with the commission's exercise of its jurisdiction. PG&E also demurred under the equitable abstention doctrine and on the ground that the complaint failed to state a cause of action against PG&E's parent company, PG&E Corporation. The superior court sustained PG&E's demurrer without leave to amend. It explained the action was barred by Public Utility Code section 1759. "Through the proceeding commenced by the Order Instituting Investigation, I.12-01-007, California Public Utility Commission, January 12, 2012, the California Public Utilities Commission has exercised its jurisdiction over the subject matter of this suit. This action interferes with the California Public Utilities Commission's jurisdiction." Plaintiffs filed a timely appeal.

## DISCUSSION

### I. Standard of Review

The standard that governs our review on appeal from a judgment dismissing an action after a demurrer is sustained without leave to amend is well established. We give the pleading a reasonable interpretation and treat the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We do not, however, assume the truth of contentions, deductions or conclusions of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) The judgment "must be affirmed if any one of the several grounds of demurrer is well taken." (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21.) However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Payne v. National Collection Systems, Inc*. (2001) 91 Cal.App.4th 1037, 1043– 1044.) And a trial court abuses its discretion if it sustains a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the

3

defendant can be cured by amendment.  (*Id*. at p. 1044.)  Nevertheless, if no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer, and if the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed.  (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43–44.)  "The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended. [Citation.]"  (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)  Thus, the judgment here must be affirmed unless plaintiffs can show that the complaint falls outside the scope of the PUC's jurisdiction or that the litigation will not interfere with the PUC's exercise of its authority.

## II. The Application of section 1759

Plaintiffs' central contention is that the PUC proceedings related to the San Bruno explosion do not encompass any consideration of whether PG&E should recompense its customers for its past misappropriation of monies received in natural gas rates. According to plaintiffs, the limited scope of those proceedings is forward-looking and includes no consideration of whether ratepayers should be afforded a remedy for PG&E's past misappropriation.  Therefore, they maintain, the judgment should be reversed because the trial court was wrong to apply section 1759, subdivision (a).

Section 1759, subdivision (a) provides that:  "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court."  Moreover, direct challenges to any decision or order of the PUC may only be brought on grounds specified in the Public Utilities Act.  (See §§ 1757 & 1757.1)

Notwithstanding these limitations, trial courts have authority under section 2106 to entertain a private action for damages arising out of any unlawful act by a regulated utility, including the violation of any PUC order or decision. (§ 2106) Our high court has addressed the apparent tension between these two sections of the Public Utilities Act in several decisions. (*Waters v. Pacific Telephone Company* (1974) 12 Cal.3d 1; *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893 (*Covalt*); *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256.)

The *Covalt* decision has emerged as the leading case guiding the determination whether a private action runs afoul of section 1759. In *Covalt*, the court declared the primacy of section 1759, and made clear that a private right of action under section 2106 is limited to those situations where an award would not "hinder or frustrate the commission's declared supervisory and regulatory policies." (*Covalt, supra,* 13 Cal.4th at pp. 917–918.) Under *Covalt*, the court considers: (1) whether the commission has the authority to adopt a regulatory policy; (2) whether the commission has exercised that authority; and (3) whether the superior court action would hinder or interfere with the commission's exercise of regulatory authority. (*Id.* at pp. 924, 926, 935; *Sarale v. Pacific Gas & Electric Co.* (2010) 189 Cal.App.4th 225.) Under *Covalt*, therefore, the determination here turns on whether the PUC had policymaking authority to set and review PG&E's natural gas rates chargeable to consumers, whether it exercised its authority over rates, and whether the plaintiffs' action would interfere with the PUC's exercise of its authority.

A. *The PUC Exercised Its Authority*

Here, there is no dispute that the PUC has constitutional and regulatory authority to set rates that PG&E may charge its customers for natural gas service. The initial question, rather, is whether the PUC has exercised its regulatory authority over PG&E's consumer rates for natural gas. We conclude that it has.

One of the central functions of the PUC is to determine whether charges demanded by any public utility are just and reasonable. (§ 451) The record here reflects that the PUC established rates for PG&E's natural gas transmission operations in five different rate proceedings from 1997 to 2010. While many rate cases cover a three-year period as plaintiffs allege, the five rate cases at issue here covered the following periods: 1997-2002, 2003, 2004, 2005-2007, and 2008-2010. In each of these proceedings, the commission adopted an annual revenue requirement for PG & E based on its analysis of the record concerning PG & E's requested revenues and forecast work, which was used to calculate the rates charged to PG&E customers.

The PUC also conducted multiple proceedings in the aftermath of the 2010 San Bruno pipeline explosion. Following the explosion, the PUC's Consumer Protection and Safety Division investigated the incident and issued a report (CPSD Report). The PUC also initiated four regulatory proceedings. The Commission issued an Order Instituting Investigation (Safety Recordkeeping OII) on February 24, 2011; another Order Instituting Investigation (Rulemaking OII) on February 25, 2011; an Order Instituting Investigation (High Population Areas OII) on November 10, 2011; and an Order Instituting Investigation (CPSD Report Evaluation OII) on January 12, 2012. The Commission also retained an independent firm, Overland Consulting, LLC, to review PG&E's gas transmission safety related activities from a financial and regulatory audit perspective.

Plaintiffs contend that the PUC's regulatory proceedings are limited in scope and do not encompass their claims. They argue that their civil action is seeking compensation for PG&E's misappropriation of monies already paid and thus does not fall within the regulatory authority thus far exercised by the PUC. In making this argument, plaintiffs seem to misconstrue the second prong of the *Covalt* test. The second prong asks whether the PUC exercised its authority to adopt a regulatory policy. Under *Covalt*, the element is satisfied if the PUC has done so. "For purposes of applying the *Covalt* test, it does not

6

matter whether [the court] characterize[s] the commission's actions broadly . . . or narrowly . . . ." (*Sarale v. Pacific Gas & Electric Co., supra*, 189 Cal.App.4th at p. 239.) What matters is that the commission has exercised its authority to adopt a regulatory policy—regardless of how that policy may be characterized. Here, the PUC exercised its authority to set PG&E's charges for natural gas in the regular ratemaking proceedings between 1997 and 2010. And, as we shall explain, the PUC has also exercised its ratemaking authority in the proceedings arising out of the San Bruno explosion.

*B. Plaintiffs' Action Interferes with the PUC's Exercise of its Regulatory Authority*

In arguing the narrow scope of the proceedings following the San Bruno explosion, plaintiffs are really addressing the third prong of the *Covalt* test—that is, whether the superior court action would interfere with or hinder the commission's exercise of regulatory authority. We conclude that upon a fair reading of the record of the administrative proceedings before the PUC, plaintiffs' action seeking disgorgement, restitution, and damages for misappropriation of PUC approved funds interferes with the PUC's ongoing authority over natural gas rates.

To begin with, the scope of the post-explosion regulatory proceedings is not nearly as narrow or prospective as the plaintiffs claim. The CPSD Report Evaluation OII states it is intended "to determine whether PG&E has violated Section 451 of the California Public Utilities Code, General Order 112 [maintenance and operation of gas transmission systems], or any other applicable federal or state statute, law, general order, rule, regulation, industry safety standard, or Commission decision." The order also makes clear that the CPSD Report Evaluation OII proceeding is not only prospective in nature. "[F]uture safety rules are not the focus of this investigation. Rather, this is an enforcement proceeding to ascertain whether safety violations have occurred, and if so to impose fines and remedies." The order also puts PG&E "on notice" that the PUC will conduct a separate proceeding to determine whether PG&E "ratepayers or shareholders, or both, will pay for PG&E testing, pipe replacement, or other costs."

In a similar way, the Safety Recordkeeping OII is an adjudicatory proceeding convened to ascertain whether PG&E's recordkeeping practices for its gas transmission system were legally deficient and unsafe, and thereby contributed to the San Bruno explosion.

But the clearest evidence that plaintiffs' litigation would interfere with the PUC's exercise of its regulatory authority over rates is the decision in the Rulemaking OII. In its decision, the PUC makes clear that while PG&E's remedial plan for natural gas operations is forward-looking, the allocation of its cost between shareholders and ratepayers took into account past practices and the burdens of past rates. Moreover, the decision specifies that future adjustments to rates may be adopted in each of the three other administrative proceedings that remain pending.

Specifically, addressing TURN's position that PG&E should not recover its expenses in rates, the PUC made clear that TURN's argument was different from the precise theory advanced before us in plaintiffs' complaint. "TURN does not argue that PG&E has previously received ratepayer funding for the activities contemplated by the Implementation Plan and not performed the approved tasks. Similarly, TURN does not contend that PG&E's Implementation Plan proposed expenditures are completely unnecessary, although TURN does take issue with certain expenditures. TURN's argument here is that PG&E should have made these improvements previously, and TURN does not contest that such costs would likely have been included in revenue requirement at that time. Because PG&E had a pre-existing obligation to institute these improvements, TURN concludes that PG&E's proposal for ratepayers to fund these improvements now is unreasonable."

In rejecting TURN's position, the PUC made a finding that is irreconcilable with the plaintiffs' claim. The decision states, "From a ratemaking perspective, PG&E's ratepayers have not been subject to unreasonable costs; rather, as a result of needed but not performed safety improvement projects, ratepayers ended up paying rates lower than

8

may have been reasonable due to the absence of the needed projects." The PUC's decision goes on to disallow inclusion of some of PG&E's requested safety related expenses in its natural gas rates due to its past practices. In all, PG&E was authorized to recover only $299 million of $769 million it had requested, with the disapproved expenses to be borne by shareholders.

This case is very different from cases in which the courts have concluded that a private right of action would not interfere with the PUC's authority. In *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256, the court considered whether PUC regulated water companies could be sued for supplying unsafe drinking water. The court allowed the plaintiff to sue on a claim that the defendants had supplied water that did not meet state and federal drinking water standards, but did not allow claims to proceed on a theory that the drinking water standards utilized by the PUC were themselves inadequate. (*Id*. at pp. 276–277, 278–279.) The plaintiffs say this case is like the claim allowed to proceed in *Hartwell*. We disagree.

Here, the plaintiffs are not seeking damages because PG&E violated a PUC ruling or order by charging rates for natural gas in excess or different from those approved by the PUC. Instead, they claim that the rates approved by the PUC should be refunded because PG&E used the monies received from consumers in improper ways. This claim is more closely analogous to the disallowed claim in *Hartwell*. An order of the superior court directing restitution to PG&E consumers in this case will direct refunds of rates approved by the PUC, rates that are continuing to receive scrutiny in the wake of the San Bruno explosion. Such an order would, in effect, hold PG&E liable for charging rates expressly authorized by the PUC, and that remain under the PUC's consideration.

The plaintiffs also argue that our decision in *Mata v. Pacific Gas & Electric Co.* (2014) 224 Cal.App.4th 309 supports their argument. Not so. In *Mata*, we considered whether an order by the PUC that established the minimum clearances of trees from high voltage lines could bar an action for damages for wrongful death brought by the heirs of a

9

decedent killed in a tree trimming accident. In determining the action could proceed, we concluded that the PUC orders in question established a minimum standard that would relieve PG&E of any claim of negligence per se, but did not establish a maximum clearance. Hence, a private action could be brought on the basis that the trees in question should reasonably have been trimmed to allow for greater clearance from high voltage lines than required by the PUC, and allowing such an action to proceed would complement rather than hinder the PUC's jurisdiction. (*Mata, supra,* 224 Cal.App.4th at pp. 316–318.) The private action asserted here is quite different. The PUC has in the past approved a precise measure of rates chargeable by PG&E to its natural gas customers. Since the San Bruno explosion, PUC proceedings have taken into account the proper measure of expenses for improvements to the natural gas transmission system that should be borne by PG&E shareholders, and those that can be passed along to ratepayers. The ratepayers have received recompense in these proceedings to the extent that PG&E shareholders have had to bear the expense for improvements that otherwise would have been passed along to its customers. Whether or not more should be done for ratepayers in these circumstances is and remains for the PUC to decide, not the courts.

Section 1759 applies here to bar the plaintiffs' suit, even though the PUC has not considered the precise claim advanced in their complaint. As stated in *Covalt*, "an action for damages against a public utility pursuant to section 2106 is barred by section 1759 not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct , or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy." (*Covalt*, *supra*, 13 Cal.4th at p. 918.) Here, ratemaking has been an integral component of the PUC's regulation and supervision of PG&E's natural gas operations since at least 1997. The impact of the expenses to be incurred by PG&E for gas transmission improvements as a result of the

San Bruno explosion, and the relationship those expenses may bear to past natural gas rates and PG&E's past practices, remain a focus of the ongoing administrative proceedings initiated by the PUC in the explosion's aftermath. Plaintiffs' action would interfere with this ongoing exercise of authority by the PUC.

## DISPOSITION

Appellants' request for judicial notice filed November 14, 2013, is denied. The matters for which notice was sought are immaterial to our resolution of this appeal. The judgment is affirmed.

 

_____
Siggins, J.

We concur:


_____
Pollak, Acting P.J.


_____
Jenkins, J.

Trial Court:                              Superior Court of the City and County of
                                          San Francisco


Trial Judge:                              Honorable Richard A. Kramer


Counsel for Appellants:                   Peter John Koenig
                                          Walter Herbert Walker, III
                                          WALTER HAMILTON & KOENIG

                                          Brian S. Kabateck
                                          Richard L. Kellner
                                          Scott M. Malzahn
                                          KABATECK BROWN KELLNER LLP

                                          Andrew H. Meisel
                                          MEISEL & KRENTSA

Counsel for Respondents:                  Eric Matthew Hairston
                                          Scott Anthony Westrich
                                          Joseph M. Malkin
                                          ORRICK HERRINGTON &
                                          SUTCLIFFE