Filed 5/11/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TRUCONNECT COMMUNICATIONS, INC., <br>     Plaintiff and Appellant, <br> v. <br> MAXIMUS, INC., et al., <br>     Defendants and Respondents. | A163562 <br><br> (San Francisco County <br> Super. Ct. No. CGC-21-589607) |

Appellant TruConnect Communications, Inc. provides telephone service to lower-income Californians under a program administered by the California Public Utilities Commission (CPUC or Commission) called "LifeLine." TruConnect sued two companies hired by the CPUC, respondents Maximus Inc. and Solix, Inc., claiming they botched the rollout of a new software platform used to enroll people in Lifeline, causing TruConnect to lose millions of dollars. The trial court ruled that it lacked jurisdiction and dismissed the action. We reverse this ruling, but we remand to the trial court to decide whether the lawsuit is nonetheless barred because the Commission is an indispensable party or for other reasons.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Lifeline provides discounted telecommunications services to eligible low-income Californians. The CPUC is authorized to administer the program

under the Moore Universal Telephone Service Act (Act). (Pub. Util. Code, § 871 et seq.[1]) The Act declares that furnishing LifeLine telephone service "should be supported fairly and equitably by every telephone corporation, and the [C]ommission, in administering the lifeline telephone service program, should implement the program in a way that is equitable, nondiscriminatory, and without competitive consequences for the telecommunications industry in California." (§ 871.5, subd. (d).)

To implement the Act, the CPUC in 1983 adopted General Order 153, which establishes administrative procedures for LifeLine. The order spans a little over 35 pages and provides information about tariff filings, provider notices, enrollment procedures, service requirements, rates, audits, and other procedures. The order sets forth customer eligibility criteria, and it explains the role of a "third-party administrator," an entity hired by the CPUC to qualify applicants and verify their initial and continued eligibility for the program. Section 9 of the order explains the procedure for service providers to seek reimbursement from the CPUC for "LifeLine-related costs and lost revenues." The section describes what types of costs and lost revenues may be recovered from the California "LifeLine Fund," a repository of LifeLine surcharge money. Lost revenues apparently refers to the difference between a provider's normal rates and the discount rates charged to LifeLine subscribers.

TruConnect provides free wireless telephone service to eligible Californians through LifeLine. It is a regulated public utility. (§ 216, subd. (a) ["telephone corporation" is a public utility].) The CPUC in late 2018 announced that it planned to switch the third-party administrator managing

---

[1] All statutory references are to the Public Utilities Code unless otherwise specified.

2

LifeLine enrollment. It selected respondent Maximus. Although the role of Maximus, as a third-party administrator, is described in General Order 153, the company itself apparently is not a regulated utility. According to the operative complaint, TruConnect realized Maximus was "woefully unequipped to take over" as administrator, and TruConnect asked the CPUC to delay the rollout of new software "until . . . major issues were worked out to avoid substantial losses." The launch nonetheless went forward on April 1, 2019. Maximus ultimately "recruited TruConnect and its team of software engineers and operational and technical staff to assist with the failed software launch." The complaint alleges that "TruConnect invested hundreds of thousands of man-hours into salvaging the Maximus platform rollout." The launch of Maximus's platform "was a failure from the start, with thousands of applicants blocked from enrollment because the new system prevented the necessary CPUC decisions required by [General Order 153] . . . , including payment to LifeLine providers." After Maximus "proved it was recklessly unequipped to fix the errors it caused and that TruConnect foresaw, Maximus subcontracted work to [respondent] Solix." TruConnect claims it incurred losses of more than $14 million in lost revenue and expenses in connection with the launch.

TruConnect first sought reimbursement from the CPUC for losses allegedly incurred when customers were mistakenly deemed ineligible for the program. The Commission initially paid some of these claims, but it eventually questioned TruConnect about reimbursing a category of costs TruConnect called "lost opportunities." TruConnect explained that it sought reimbursement for customers who wanted TruConnect's services but were unable to enroll because of the third-party administrator's flawed rollout. In September 2020, the CPUC issued Resolution T-17707, which denied

3

reimbursement for these types of losses. The Commission concluded that although section 9 of General Order 153 allows recovery of costs and lost revenues for carriers that provide LifeLine service to eligible subscribers, the order does not provide recovery for such costs when they are associated with customers who never received LifeLine service. The resolution stated that General Order 153 "expressly forbids 'lost opportunities' or 'missed opportunities' costs" relating to potential customers who were never found to be eligible for LifeLine. According to the resolution, reimbursement for such costs and lost revenues would "jeopardize[] the ongoing health of the [LifeLine fund]." The CPUC thus denied TruConnect's reimbursement claims for costs and lost revenues for customers who were never deemed eligible for LifeLine, and it sought to recover the money it had previously paid to reimburse such claims. The CPUC later denied TruConnect's requests for a rehearing and stay of Resolution T-17707.

Also in September 2020, TruConnect sued the CPUC, Maximus, and Solix. TruConnect soon acknowledged there were "jurisdictional considerations" implicated by the inclusion of the CPUC in its lawsuit and requested dismissal of the case less than two months after it was filed.

In February 2021 TruConnect initiated this lawsuit against Maximus and Solix only. Although TruConnect's initial complaint was filed against only those two companies, it included several allegations regarding the CPUC's alleged conduct. For example, the complaint included a heading stating, "The CPUC Mismanaged the Rollout of a New TPA [Third-Party Administrator] in California." (Formatting omitted.) It alleged that "the CPUC initiated a chain of events that, through actions by Maximus and Solix, has cost TruConnect millions of dollars." It also alleged that "the CPUC and Maximus recklessly and intentionally decided to push ahead with

4

launching the new Maximus platform." And it alleged that TruConnect's concerns about the launch of the new system were ignored "due to the internal pressures at the CPUC and the desire to avoid financial penalties."[2]

In June 2021, TruConnect filed a first amended complaint, omitting most of its previous allegations concerning the CPUC. For example, the heading stating that the CPUC mismanaged the rollout of a new third-party administrator was changed to state, "The Rollout of a New TPA in California Is Mismanaged." (Formatting omitted.) The amended complaint alleged causes of action for negligence, intentional interference with prospective economic relations, negligent interference with prospective economic relations, aiding and abetting interference with prospective economic relations, violations of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), quantum meruit, and unjust enrichment.

Maximus and Solix demurred to the complaint. They argued that the trial court lacked jurisdiction under section 1759 and that the trial court should exercise judicial abstention in any event. They also argued that the lawsuit was barred because the CPUC was an indispensable party that had not and could not be joined. Finally, they argued that each claim failed to state a cause of action.

The trial court sustained both respondents' demurrers without leave to amend. It concluded that section 1759 barred the complaint because TruConnect's claims were preempted, and the court did not address

---

[2] After TruConnect filed this case, it filed a writ of review in the Second District challenging the CPUC's denial of its reimbursement request. That court summarily denied the petition. (*TruConnect Communications, Inc. v. Public Utilities Commission* (B310492, petn. den. May 6, 2021).)

5

respondents' other arguments.  TruConnect appealed.[3]  The CPUC has filed

an amicus curiae brief in support of Maximus and Solix.

## II.
### DISCUSSION

*A.  The Standard of Review.*

"In reviewing the sufficiency of a complaint against a general

demurrer, we are guided by long-settled rules.  'We treat the demurrer as

admitting all material facts properly pleaded, but not contentions, deductions

or conclusions of fact or law.  [Citation.]  We also consider matters which may

be judicially noticed.'[4]  [Citation.]  Further, we give the complaint a

reasonable interpretation, reading it as a whole and its parts in their context.

[Citation.]  When a demurrer is sustained, we determine whether the

complaint states facts sufficient to constitute a cause of action.  [Citation.]

---

[3] As TruConnect seems to acknowledge, no formal judgment of dismissal appears in the record.  "The general rule is that an order sustaining a demurrer without leave to amend is not appealable, but a party may appeal from the entry of dismissal after such order."  (*Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 411, fn. 1.)  But we agree with TruConnect that it is appropriate here to treat the orders as a judgment of dismissal since the court sustained respondents' demurrers without leave to amend.  (*Ibid.*; see also *Swain v. California Casualty Inc. Co.* (2002) 99 Cal.App.4th 1, 6 [where trial court, in ruling on summary judgment motion, "clearly intended to finally dispose of plaintiffs' complaint," appellate court may treat it as an effective judgment].)

[4] The trial court granted respondents' request to take judicial notice of TruConnect's original complaint in this action, the company's previous complaint against the CPUC and its request to dismiss that complaint, the CPUC's General Order 153, the Commission's Resolution T-17707 and its denial of rehearing, and the pleadings in TruConnect's writ of review in the Second Appellate District.  Although TruConnect challenged the request for judicial notice of some of these documents in the trial court, it does not challenge the court's ruling on appeal.  This court takes judicial notice of the documents as well.  (Evid. Code, § 459, subd. (a).)

6

And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We likewise review de novo whether the trial court has subject matter jurisdiction over an action. (*PegaStaff v. Public Utilities Com.* (2015) 236 Cal.App.4th 374, 380.)

### B. Section 1759 Does Not Bar TruConnect's Lawsuit Since Recovery Would Not Conflict with a CPUC Order or Interfere with Its Oversight of LifeLine.

The CPUC " 'is a state agency of constitutional origin with far-reaching duties, functions and powers. (Cal. Const., art. XII, § 1–6.) The Constitution confers broad authority on the commission to regulate utilities, including the power to fix rates, establish rules, hold various types of hearings, award reparation, and establish its own procedures. (*Id.*, § 2, 4, 6.) The commission's powers, however, are not restricted to those expressly mentioned in the Constitution: "The Legislature has *plenary power, unlimited by the other provisions of this constitution* but consistent with this article, to confer additional authority and jurisdiction upon the commission . . . ." (Cal. Const., art. XII, § 5.)' [Citation.]" (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 914–915. (*Covalt*).) Under this constitutional provision the Legislature has enacted the Public Utilities Act (§ 201 et seq.), which grants the CPUC broad supervisory and regulatory authority over all public utilities in the state. (*Covalt* at p. 915.) But the CPUC's powers are not limited to those expressly conferred to it, because the Legislature has authorized the Commission to do all things that are

7

necessary and convenient in the exercise of its jurisdiction over public utilities.  (*Ibid.*)

The Constitution also confers power on the Legislature to "establish the manner and scope of review of commission action in a court of record."  (Cal. Const., art. XII, § 5; see *Covalt*, *supra*, 13 Cal.4th at p. 915.)  Under this authority the Legislature enacted section 1759, subdivision (a), which provides that "[n]o court of this state, except the Supreme Court and the court of appeal, . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the [CPUC] or to suspend or delay the execution or operation thereof, *or* to enjoin, restrain, or interfere with the commission in the performance of its official duties."  (Italics added.)  The statute thus bars trial court jurisdiction in two situations:  where a trial court action would conflict with a specific CPUC decision *or* where such an action would interfere with the CPUC's ongoing regulatory duties.  In other words, section 1759 bars an action against a public utility "not only when an award of damages would directly contravene a specific order or decision of the commission, i.e., when it would 'reverse, correct, or annul' that order or decision, but also when an award of damages would simply have the effect of undermining a general supervisory or regulatory policy of the commission, i.e., when it would 'hinder' or 'frustrate' or 'interfere with' or 'obstruct' that policy."  (*Covalt*, at p. 918.)  To determine whether section 1759 bars a superior court action for damages, courts look to whether an action "would impermissibly interfere with a broad regulatory policy of the commission on this subject."  (*Covalt*, at p. 903.)  It considers three factors:  (1) whether the CPUC has authority to adopt policy regarding the subject matter of the litigation, (2) whether the Commission has exercised the foregoing authority,

8

and (3) whether the present action would hinder or interfere with the foregoing CPUC policy. (*Id.* at pp. 923, 926, 935.)

In sustaining respondents' demurrers, the trial court concluded that the *Covalt* factors applied to bar TruConnect's complaint: (1) the CPUC has authority to adopt policy regarding the LifeLine program; (2) the Commission exercised that authority when it determined that a new platform should be launched despite TruConnect's reservations, refused to reimburse TruConnect for certain alleged lost revenue, and demanded the return of previously reimbursed losses; and (3) prosecution of the action would hinder or interfere with the CPUC's exercise of regulatory judgment. Regarding the third factor, the court found that allowing the case to proceed against respondents would undermine the CPUC's decision to launch the new software when it did, infringe on the Commission's judgment about applicants' eligibility for enrollment in the program, and encroach on the Commission's determination that TruConnect was ineligible for reimbursement.

On appeal, TruConnect apparently does not challenge the first two *Covalt* factors. That is, it does not argue that the CPUC lacked or failed to exercise authority over LifeLine. As for whether allowing the lawsuit to proceed here would interfere with the CPUC's authority, though, TruConnect

9

argues that under *Hartwell Corp. v. Superior Court* (2002) 27 Cal.4th 256 (*Hartwell*) the *Covalt* test does not apply.[5]

*Hartwell* involved a lawsuit brought by residents against various water companies alleging that they had provided unsafe water. (*Hartwell, supra,* 27 Cal.4th at p. 260.) Some of the companies were subject to CPUC regulation, and some were not. (*Ibid.*) Our Supreme Court held that section 1759 did not preempt claims against the nonregulated water companies because nothing in the statute meant " 'that trial courts may not decide issues between parties not subject to PUC regulation simply because the same or similar issues are pending before the PUC or because the PUC regulates the same subject matter in its supervision over public utilities.' " (*Hartwell*, at p. 280.) The court noted that the nonregulated defendants "fail[ed] to cite case law to support their view that the jurisdictional bar of section 1759 applies to nonregulated parties." (*Id.* at p. 281.) It concluded that "section 1759 must be read to bar superior court jurisdiction that interferes with the PUC's performance of its *regulatory* duties, duties which by constitutional mandate apply only to regulated utilities." (*Id.* at pp. 280–281.)

---

[5] Maximus claims that TruConnect is barred from making this argument since it is "an entirely new theory raised for the first time on appeal." First, we question whether this is truly a new legal theory, as opposed to a different way of arguing that the trial court has jurisdiction to proceed. In any event, "[w]hen a demurrer is sustained without leave to amend the [appellant] may advance on appeal a new legal theory why the allegations of the [complaint] state a cause of action." (*20th Century Ins. Co. v. Quackenbush* (1998) 64 Cal.App.4th 135, 139, fn. 3; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 8:242, p. 8-182 ["The rule barring new theories on appeal normally is limited to appeals *after trial;* it rarely applies to trial court dispositions at the *pleading* stage."].)

10

TruConnect interprets *Hartwell* broadly to mean that section 1759 *never* applies to "private parties that are not regulated public utilities." We do not read the case so expansively. Unlike here, the CPUC in *Hartwell* had no authority over either the plaintiffs or the nonregulated defendants. It is thus hard to conceive of any situation where the CPUC would have had, let alone exercised, authority over any of the parties as contemplated by *Covalt*. The parties' litigation could not be considered to be barred by section 1759 because the CPUC had no jurisdiction to hear complaints or claims against the nonregulated entities. (*Hartwell*, *supra*, 27 Cal.4th at p. 282.) Here, by contrast, TruConnect—a regulated utility—already has sought reimbursement from the CPUC but was denied relief.

It does not follow, however, that TruConnect is precluded under section 1759 from bringing its claims against Maximus and Solix. In evaluating whether the lawsuit here would conflict with a specific CPUC order, the trial court concluded that it would need to determine whether rejected applicants were in fact qualified for LifeLine, eligibility determinations exclusively within the CPUC's regulatory judgment. But as TruConnect points out, there is no risk of conflicting determinations because the CPUC has never made any determinations about the qualifications of rejected applicants. And although the CPUC made the regulatory determination to proceed with the launch of the new platform despite TruConnect's concerns, this was a forward-looking decision, made before the time when respondents are alleged to have harmed TruConnect. No decision about that alleged conduct will interfere with the CPUC's past decision to proceed.

True, the CPUC has determined that TruConnect is not eligible for reimbursement *from the CPUC's LifeLine fund*. It found that General

11

Order 153 does not permit reimbursement for "lost opportunity" costs but only for costs associated with providing service to customers found to be eligible for LifeLine service. Again, section 9 of the order provides a detailed procedure for service providers to obtain reimbursement from the LifeLine fund, consisting of surcharge money, as directed by the CPUC. The Commission did not, as Maximus suggests,[6] determine whether TruConnect lost potential customers who were eligible for LifeLine; it determined only whether such loss qualified for reimbursement under the order.[7] Nor did the Commission find "that there was never an enforceable promise" *by respondents* to compensate TruConnect, only that CPUC staff members did not bind the CPUC with any such promise.

We recognize that Resolution T-17707 states that even if the costs were not prohibited under General Order 153, they would be "too vague and uncertain to calculate with any precision." But this comment was made in the context of a company seeking money through a routine reimbursement procedure, as opposed to seeking damages through a court's fact-finding process. We disagree with Maximus that any factfinding in the trial court would "overturn" the CPUC's resolution. We likewise disagree with the CPUC's argument in its amicus brief that TruConnect's claims "were definitively and properly denied," insofar as the Commission contends they were denied for all purposes. Whether TruConnect was entitled to reimbursement under General Order 153 is a narrow question that does not

---

[6] Solix joins in Maximus's argument that section 1759 bars TruConnect's action. (Cal. Rules of Court, rule 8.200(a)(5).)

[7] Maximus also faults TruConnect for failing to exhaust its administrative remedies. Again, though, pursuing such remedies *against the CPUC* for money from the LifeLine fund would not resolve or even touch on whether TruConnect is entitled to damages from third parties.

affect whether it is potentially entitled to damages from respondents under tort and related theories.

In its amicus brief, the CPUC points to various allegations in TruConnect's operative complaint regarding General Order 153 and argues that they amount to a collateral attack on the denial of TruConnect's previous claim for lost revenues. The complaint alleges that the order contemplates reimbursement for costs and lost revenue and requires the third-party administrator to provide an eligibility determination within one business day. It also alleges that the "bugs and errors" in Maximus's "irresponsible [platform] rollout" had the effect of "conceal[ing] the submission of thousands of qualified applicants by TruConnect, in violation of [the order]." Those "bugs and errors" meant the platform failed to provide "the necessary CPUC decisions required by [the order]." The complaint further alleges that the CPUC denied reimbursement even though the order "specifically provides for reimbursement of lost revenue," that the intent of the order to provide a needed service was thwarted by the flawed rollout, and that the order's requirement for the third-party administrator to qualify LifeLine applicants created a duty that Maximus and Solix owed to TruConnect.

The CPUC characterize these allegations as claiming that the Commission incorrectly interpreted its general order, and it argues that the suit amounts to a challenge of its implementation of LifeLine program rules. We are not persuaded. To prevail in this action, TruConnect will have to establish that Maximus and Solix's rollout of the platform was wrongful, causing it to lose out on subscribed customers. But it will not have to establish that the CPUC erred when it declined to reimburse the company under its interpretation of General Order 153. And if TruConnect were to

establish liability, obtaining damages from Maximus and Solix would not conflict with any CPUC order since the Commission has never determined whether those companies owe TruConnect. As TruConnect puts it, its claims "are based on tort law, not [General Order] 153, and any recovery against [Maximus and Solix] would come directly from [them]—not from LifeLine funds." Maximus's counsel stressed at oral argument that it is irrelevant whether the CPUC is named in the complaint, and that we should focus instead on the underlying allegations. We agree with Maximus insofar as nothing in this opinion should be construed as permitting a finder of fact to undo any CPUC decision or action. But although the complaint includes allegations that the CPUC erred when it denied the company reimbursement, it does not seek in this action to set aside that decision.

Having concluded that this court action would not be inconsistent with any CPUC order or decision (§ 1759, subd. (a)), the question remains whether the action would "enjoin, restrain, or interfere with the commission in the performance of [the CPUC's] official duties." (*Ibid.*) In *Hartwell*, the plaintiffs challenged both the CPUC's standards for water quality and whether the regulated defendants had complied with them. (*Hartwell*, *supra*, 27 Cal.4th at p. 276.) The court concluded that a challenge to the standards would interfere with the CPUC's ongoing regulatory supervision, but a challenge that the utilities violated those standards would not. (*Ibid.*) "Although a PUC factual finding of past compliance or noncompliance may be part of a future remedial program, a lawsuit for damages based on past violations of water quality standards would not interfere with such a prospective regulatory program." (*Id.* at p. 277.) CPUC actions to redress violations of law involve "remedies [that] are essentially prospective in nature. They are designed to stop the utilities from engaging in current and

14

ongoing violations and do not redress injuries for past wrongs." (*Ibid.*) TruConnect argues that because it seeks relief only for past injuries, *Hartwell* permits its lawsuit. While this again may be an overly broad reading of *Hartwell*, we agree with TruConnect to the extent it argues that a court action focusing on respondents' alleged wrongdoing would not interfere with the Commission's ongoing regulatory obligations.

Maximus contends that an award of damages to TruConnect would "require[] the Superior Court to create precedent that could be used by current and future Service Providers, consumers, and third parties to obtain results contrary to the CPUC's rules, policies, and judgment." Maximus claims that service providers and consumers could use a decision favorable to TruConnect to "demand that the CPUC approve applications based on the Superior Court's interpretation of the enrollment criteria in [General Order] 153" or "demand reimbursements from the CPUC for any lost opportunity costs and expenses they may incur whenever there are 'bugs and errors' in any type of technology used by the CPUC." Service providers are of course always free to submit to the CPUC reimbursement requests they believe are appropriate. But a court order requiring a third party to pay damages to TruConnect would not require the CPUC to take any different action in the future.

Maximus further contends that allowing this lawsuit to proceed would mean that "Service Providers and consumers could go to the Superior Court whenever they are unhappy with the CPUC's response to their demands and use the Superior Court's decision in Appellant's case as precedent." And it claims that service providers "could use the decision in Appellant's case to demand that the [third-party administrator] (and other CPUC agents) refuse to follow CPUC decisions with which they disagree." These contentions are

15

exaggerated and speculative. By bringing this lawsuit, TruConnect is not "refus[ing] to follow" Resolution T-17707, and the suit's disposition would set no precedent encouraging service providers to ignore CPUC decisions. TruConnect is simply seeking money from respondents under various tort and related theories. Assuming these theories are cognizable, we do not see how recovery would interfere with the CPUC's ongoing regulation of the LifeLine program. We find support for this conclusion in *People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132 (*Orloff*). There, the Supreme Court concluded that section 1759 did not preclude a lawsuit brought by several district attorneys against a public utility for allegedly engaging in false advertising and unfair business practices, even though the CPUC had initiated an administrative enforcement action involving some of the same allegations. (*Orloff* at p. 1137.) The court noted that "the *mere possibility* of, or *potential* for, conflict with the PUC is, in general, insufficient in itself to establish that a civil action against a public utility is precluded by section 1759." (*Id.* at p. 1138, italics added.) Here, any potential conflicting ruling is even more speculative since TruConnect is not asking for relief that would conflict with any CPUC decision or enforcement action.

At oral argument, Maximus's counsel argued that the tentative decision we issued construed *Covalt* too narrowly, and he directed us to two cases he contended direct the outcome here. In *Goncharov v. Uber Technologies, Inc.* (2018) 19 Cal.App.5th 1157, 1161 (*Goncharov*), the plaintiffs sued Uber for allegedly failing to comply with CPUC licensing requirements for charter-party carriers. This court concluded that section 1759 barred the complaint because Uber's status had been the subject of a CPUC rulemaking, and thus "[a]ny determination [by the trial court] regarding Uber's status would strike at the heart of this process."

16

(*Goncharov* at p. 1171.)  This court focused on the " '[t]he crux of [the plaintiff's] CPUC-based claims.' " (*Id.* at p. 1172.)  The plaintiffs were asking for a determination of whether Uber qualified as a charter-party charrier and what regulations should apply to its operations—questions "the CPUC ha[d] been attempting to resolve . . . for over four years." (*Id.* at p. 1173.)

In *Lefebvre v. Southern California Edison* (2016) 244 Cal.App.4th 143, 145 (*Lefebvre*), the other case Maximus's counsel raised at oral argument, a plaintiff filed a putative class action against a regulated utility claiming it had fraudulently enrolled ineligible customers in an assistance program for low-income electricity and gas customers, causing the surcharge imposed on other ratepayers to be higher than it should be.  The court concluded that section 1759, subdivision (a) barred the complaint "because a judgment in [the plaintiff's] favor would have the effect of undermining a general supervisory or regulatory policy of the Public Utilities Commission." (*Lefebvre* at pp. 145–146.)  The court looked at "[t]he 'gist' of the suit," which was that tariffed surcharges approved by the CPUC were too high.  (*Id.* at p. 158.)  Providing a refund of such a charge "would hinder and frustrate the PUC's exercise of its regulatory authority, and would penalize [the utility] for assessing surcharges expressly authorized by the PUC." (*Id.* at p. 157.)

Here, the "crux" or "gist" of TruConnect's suit is to recover damages for respondents' allegedly botched rollout of a new software platform.  Although TruConnect's complaint contains allegations about the CPUC, the action is not trying to constrain any CPUC findings, as was the case in *Goncharov*, or to interfere with the CPUC's oversight of a program, as was the case in *Lefebvre*.  Maximus's counsel at oral argument contended that the company was acting at the direction of the CPUC when it rolled out the software and thus is being sued for complying with its contract.  While we accept that

17

Maximus was generally acting under its contractual relationship with the CPUC, we do not agree that the CPUC, by virtue of that relationship, authorized or directed Maximus to injure third parties with software malfunctions and errors, thereby immunizing Maximus from any and all claims by those parties.

Nothing in our holding conflicts with *PG&E Corp. v. Public Utilities Com.* (2004) 118 Cal.App.4th 1174 (*PG&E*), upon which Maximus also relies. That case involved a CPUC investigation into the electricity energy crisis of 2000 and 2001. (*Id.* at p. 1181.) The CPUC named as parties both regulated energy companies and their holding companies that previously had been formed with Commission permission under certain conditions. (*Ibid.*) The holding companies argued that the CPUC lacked jurisdiction over them since they were not themselves regulated utilities. (*Id.* at pp. 1182, 1197.) Division Five of this court rejected this argument for several reasons. (*Id.* at pp. 1197–1215.) The court stressed that the Commission did not seek to assert general regulatory control over the holding companies; instead, the CPUC sought limited jurisdiction over them to enforce the conditions for the formation of holding companies. (*Id.* at p. 1201.) This was consistent with section 701, which provides that the Commission may "do all things . . . which are necessary and convenient" in the exercise of jurisdiction over public utilities. (See *PG&E*, at p. 1198.) The court further held that were the Commission forced to pursue an action against the holding companies in court under contract principles, any remedy might conflict with a CPUC decision over the underlying utilities, in violation of section 1759. (*PG&E* at p. 1211.) In this regard, the court rejected the holding companies' argument that under *Hartwell* the Commission could assert jurisdiction only over regulated utilities. (*PG&E* at p. 1211.)

18

Maximus argues that under *PG&E*, the Commission has jurisdiction over respondents in their capacities as third-party administrator and subcontractor. We already have rejected TruConnect's sweeping argument that section 1759 applies only to actions involving regulated utilities. But while it may be true that the CPUC *could* exercise jurisdiction over respondents in connection with LifeLine, Maximus does not explain how this potential jurisdiction would interfere with the Commission's ongoing regulatory duties. The CPUC, for its part, claims that a trial court action would interfere with its policy to deny subsidies for lost-revenue claims. Again, though, ordering respondents to pay tort damages to TruConnect would have no bearing on the Commission's reimbursement policies under General Order 153.

We agree with the CPUC that the trial court "lacks authority to determine whether LifeLine claims should be granted or denied." But again, TruConnect's complaint is not asking the trial court to overturn the Commission's decision to reject its reimbursement requests. The CPUC also argues that an action against its contractors might interfere with its efforts to secure qualified contractors. The same might be said about its ability to secure wireless providers if such providers are not able to seek compensation for damages they allege were caused by third-party administrators.

We also disagree with Maximus's brief argument that we should apply the doctrine of judicial abstention to bar TruConnect's action. True, " '[j]udicial abstention is appropriate when granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.' " (*Center for Biological Diversity, Inc. v. FPL Group, Inc.* (2008) 166 Cal.App.4th 1349, 1371–1372 [allowing plaintiffs to sue private owners of

wind turbines for breach of the public trust would interfere with county's ongoing efforts to achieve policy objectives].)  This is another way of arguing that TruConnect's action would interfere with the CPUC's ongoing regulation of LifeLine, an argument we have rejected.

In short, we conclude that section 1759 does not bar TruConnect's lawsuit since any recovery by TruConnect would not conflict with a previous CPUC order and would not interfere with the Commission's ongoing regulation of the LifeLine program.  We stress, as did the court in *Orloff*, that nothing in this present action "*inevitably* [will] lead to conflicting rulings that [will] interfere with or undermine the regulatory authority of the PUC." (*Orloff, supra*, 31 Cal.4th at p. 1138, italics added.)  Our opinion should not be interpreted to mean that the trial court has authority to enter orders or make findings inconsistent with a prior CPUC order or to interfere with the Commission's authority.  We have no doubt there will be "efforts by the superior court" to ensure that does not happen.  (*Id.* at p. 1154.)

> ### C. The Trial Court Should Determine in the First Instance Whether the CPUC Is a Necessary or Indispensable Party and Whether TruConnect's Causes of Action Are Otherwise Cognizable.

Maximus and Solix also argued below that the CPUC was a necessary and indispensable party to this lawsuit and the lawsuit could not proceed since section 1759 barred the Commission's inclusion in it.  Although the trial court did not address the argument in its orders sustaining respondents' demurrers, the parties address the issue in their appellate briefs.[8]  We conclude that the issue is better addressed by the trial court in the first instance.

---

[8] Maximus joins in Solix's argument that TruConnect's claims are barred by the necessary-and-indispensable-party doctrine.  (Cal. Rules of Court, rule 8.200(a)(5).)

Code of Civil Procedure section 389 governs joinder of parties. The statute provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party." (Code Civ. Proc., § 389, subd. (a).) If a court were to determine that the Commission was a necessary party under the statute, it is apparently undisputed that the trial court lacks jurisdiction over the CPUC. Since the trial court thus would not be able to join the Commission in the action, it would then be required to "determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable," based on the consideration of enumerated factors. (Code Civ. Proc., § 389, subd. (b).)

It is settled that a determination of whether a party is necessary or indispensable is reviewed for abuse of discretion. (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1173; *Kaczorowski v. Mendocino County Bd. of Supervisors* (2001) 88 Cal.App.4th 564, 568; *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149.) That is because "[w]hether a party qualifies as indispensable is ordinarily treated as a matter where the

21

trial court has a large measure of discretion in weighing factors of practical realities and other considerations." (*Kaczorowski*, at p. 568.)

Here, the trial court never reached the indispensable-party issue, and it therefore never weighed the relevant factors or made any findings. Under these circumstances, we conclude it is appropriate to remand the matter to the trial court to consider the issue in the first instance. If the court concludes that the CPUC is an indispensable party and that the lawsuit should not proceed, it will be unnecessary to decide whether TruConnect has alleged sufficient facts to state causes of action. We thus also decline to address the parties' arguments as to the sufficiency of TruConnect's allegations. TruConnect's June 30, 2022 request for judicial notice—seeking the introduction of items in support of its argument that it could amend its complaint—is denied.

### III.
### DISPOSITION

TruConnect's June 30, 2022 request for judicial notice is denied.

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. TruConnect shall recover its costs on appeal.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Swope, J. *


      *Judge of the Superior Court of the County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*TruConnect Communications, Inc. v. Maximus, Inc.*  A163562


23

Trial Court:

Superior Court of the City and County of San Francisco

Trial Judge:

Hon. Ethan P. Schulman

Counsel:

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., Thomas R. Freeman; KJC Law Group, A.P.C., Kevin J. Cole for Plaintiff and Appellant

Gibson, Dunn & Crutcher LLP, Maurice Suh, Zathrina Perez, Kahn Scolnick for Defendants and Respondents

Orrick, Harrington & Sutcliff LLP, Cynthia J. Larson, Justin Giovannettone for Respondent Solix, Inc.

California Public Utilities Commission, Christine Hammond, Jonathan Koltz, Travis T. Foss as Amicus Curiae on behalf of Defendants and Respondents

*TruConnect Communications, Inc. v. Maximus, Inc.* A163562